### William Drake and others' Appeal from Probate.

Where a testator, leaving an estate of $14,000, with no family, made a will five days before his death and while suffering from severe disease, by which, after giving two of his brothers $1,000 each, $1,000 to certain other relatives and $1,000 to a friend, he gave the residue of his estate to a church in the town where he lived; and it appeared that the will was drawn by *H*, who was a vestryman of the church and who was the only person who conversed with him on the subject, and who was also made sole executor; that three brothers and a sister of the testator lived within a few miles of him and were not notified of his being dangerously ill until shortly before his death and after the will was executed; that *H* was deeply interested in the welfare of the church and a liberal contributor to its support; that he and another vestryman were two of the witnesses to the will and a brother-in-law of *H* the third witness; and that the will described certain half nephews and a half niece of

the testator as his brothers and sister;—it was held that the circumstances were such as to create a suspicion of undue influence, which might be considered by the jury without any direct proof of such influence, and to require explanation on the part of the persons propounding the will.

Whether the two vestrymen were competent witnesses to the will: *Quære.*

APPEAL from a decree of a probate court approving the will of Henry Drake, deceased; taken to the Superior Court in Hartford County, and tried to the jury, upon the issue of unsoundness of mind of the testator and undue influence and fraud practiced upon him, before *Culver, J.* The will was as follows:

"I, Henry Drake, of Windsor, county of Hartford, Connecticut, of sound and disposing mind and memory, and mindful of the uncertainty of human life, do make, publish and declare the following as and for my last will and testament.

"*First.* I give and bequeath to my brothers, William Drake and Timothy Drake, to each of them, the sum of one thousand dollars to be paid by my executor from my estate.

"*Second.* I give and bequeath to my young friend, Miss Jenny D. Lavery, also the sum of one thousand dollars, to be paid as above from my estate.

"*Third.* To my brothers Nathan Drake and Samuel Drake, also to my sister, Mrs. Olive Mills, Mrs. Eliza Wells, and Mrs. Ellen Kellogg, to each one of them the sum of two hundred dollars.

"*Fourth.* To my friend Mr. Lomax, for his accommodation and comfort, I give so much land from my lot as is required to make uniform the line of Mr. Marble's land, the same to be continued to the street line. And I direct my executor to make suitable conveyance by deed to perfect said title.

"*Fifth.* All the rest, residue and remainder of my property, real and personal, I give and bequeath to the vestry and wardens of Grace Church, Windsor, and to them in office, to be held by them as trustees, the income and rents only to be used by them for the support of the ministry of said church in its mission and worship. And I require said wardens and vestry to exercise great care in its investment, seeking security rather than large income for the same. Said fund to be known as the Henry Drake fund for all time.

"I hereby constitute and appoint my friend H. Sidney Hayden, of Windsor, executor of this my last will and testament.

"Witness my hand and seal this 10th day of November, 1874, at Windsor.                HENRY DRAKE.   [L. s.] "

The will was witnessed by Charles N. Barber, Osbert B. Loomis, and H. S. Hayden.

It appeared upon the trial that two of the subscribing witnesses to the will, H. Sidney Hayden, and Charles N. Barber, were at the time of the execution of the same and still were, vestrymen of said Grace Church of Windsor, and members of the wardens and vestry of said Grace Church; also that Osbert B. Loomis, the remaining witness, was the brother-in-law of Hayden. Whereupon the appellants requested the court to charge the jury that said Hayden and Barber were interested in the matter of the will, and not legally competent to subscribe as witnesses or attest the same; but the court did not so charge the jury, and gave the jury no instruction on that subject.

The appellants also requested the court, if it should be of opinion that said Hayden and Barber were legally qualified to witness the will, to charge the jury that as they were vestrymen of said Grace Church, as a legatee under the will, the situation and conduct of the witnesses to the will required explanation; that their testimony was subject to suspicion, and that the appellees were bound to show by the preponderance of evidence that every thing connected with the instrument was free from impropriety and any unfairness. But the court did not so charge the jury.

It also appeared upon the trial that Hayden, at the request of the testator, drafted the will, and was the only person who claimed to have conversed with the testator, or to have had any interview with him about the same; that the will was drawn by Hayden and signed by the testator about five days before his death, and while he was suffering from severe disease, in the absence of all his relatives, although he had three brothers and one sister, living in the city of Hartford next adjoining Windsor; and that none of said relatives had any

notice that the deceased was dangerously sick until after the making of the will. Also that said Charles N. Barber, who was an attendant on the day of the making of the will, and before the same was executed, did not send any word to the relatives, saying they would not come if they were sent for, although he had no reason to know that they would not come, except that he understood there was not a very kind feeling existing between them and the deceased.

It was further proved that Hayden was an active member of said Grace Church, and deeply interested in its prosperity, and was in the habit of contributing liberally to its support; and that the testator died possessed of an estate valued at about fourteen thousand dollars.

Upon the foregoing facts, the appellants requested the court to charge the jury that the law raised a sufficient presumption of undue influence to change the burden of proof, and cast upon the appellees the duty of showing that every thing connected with the instrument was free from unfairness and impropriety.

The appellants also requested the court to charge the jury that, as fraud and undue influence are not ordinarily susceptible of direct proof, such undue influence might be inferred from the nature of the transaction alone, and that the jury had a right to infer undue influence from the foregoing facts.

Upon all the claims of the appellants as to undue influence and unfairness, the court instructed the jury that the burden of proof was on the appellants, that if they should find that from any cause or by any means the testator was induced to act contrary to his wishes, and to make a different will and disposition of his estate from what he would have done if left entirely to his own discretion and judgment; that his free agency and independence were overcome; that by some dominion or control exercised over his mind, he was constrained to do what was against his will, and what he was unable to refuse and too weak to resist, then they should find the issue in favor of the appellants. But moderate and reasonable persuasion, though yielded to, if done intelligently and from a conviction of duty, would not vitiate his will, if otherwise valid.

It was also proved that the persons described in the third clause of the will as "brothers" and "sister," were in fact the half nephews and half niece of the testator, and it appeared by the testimony of Hayden, that after the death of the testator and before the 30th day of November, 1874, the date of the probate of the instrument, he altered the will by changing the word "brothers" to "nephews," and the word "sister" to "niece," and in that condition it was admitted to probate as above stated, and so recorded; and that at some time afterwards, and before the trial in the Superior Court, Hayden altered back the will and the record thereof, so as to make the clause read "brothers and sister."

The appellants thereupon claimed that the instrument produced by the appellees was not the same instrument admitted to probate, from which the appeal was taken. Upon this claim the court instructed the jury that they must be satisfied that the instrument admitted to probate, was the one from which the appeal was taken; that the alteration proved did not destroy its identity, nor render it void; and that an alteration of a will by a third person, even if fraudulently made, would not invalidate it.

The jury having returned a verdict for the appellees, the appellants moved for a new trial for error in the charge of the court and in the refusal of the court to charge as requested.

*A. P. Hyde* and *L. E. Stanton*, in support of the motion.

1. The witnesses Hayden and Barber were disqualified by interest from attesting the will. At common law, any interest of the witness, however small, invalidated the whole devise. *Starr* v. *Starr*, 2 Root, 303; *Clark* v. *Hoskins*, 6 Conn., 109.

2. Upon the facts of the case the charge of the judge was clearly wrong. The circumstances attending the execution of the will, the peculiar relation which Hayden occupied with reference to the testator, together with the acknowledged fact of the alteration of the will by Hayden, all required a charge better adapted to the facts of the case. The court

Drake's Appeal from Probate.

however refused the instructions approved by this court in *St. Leger's Appeal from Probate*, (34 Conn., 434,) and simply told the jury that the burden of proving undue influence was upon the appellants. The jury must have understood that the appellants were bound to establish undue influence and fraud by positive testimony. These instructions, contrary to our own adjudged cases, undoubtedly determined the verdict.

3. On the question of soundness of mind, it will not be denied that the burden was upon the appellees. *Knox's Appeal from Probate*, 26 Conn., 20. Upon the question of unfairness and undue influence, the court in *St. Leger's Appeal* told the jury that a similar set of facts changed the burden of proof, and cast upon the appellees the duty of proving the fairness and propriety of the transaction. See also *Tyler* v. *Gardiner*, 35 N. York, 594; *Delafield* v. *Parish*, 25 id., 35; *Marsh* v. *Tyrrell*, 2 Hag., 87; *In re Welsh*, 1 Redf. Sur. R., 244; *In re Langton's will*, 1 Tuck.. Sur. R., 301; *Barry* v. *Butlin*, 1 Curteis Eccl. R., 637; *Beall* v. *Mann*, 5 Geo., 456; *Simpler* v. *Lord*, 28 id., 52; *Leacraft* v. *Simmons*, 3 Bradford, 35; *Marvin* v. *Marvin*, 4 Keyes, 9; *Lee* v. *Dill*, 11 Abbott Pr. R., 218; 1 Redf. on Wills, 121, 158.

4. The alterations were not by a stranger. If they were material, being made by a party, they would avoid the instrument, or at least the bequest in which the party was interested as legatee. *Pigot's case*, 11 Coke, 29; *Jackson* v. *Malin*, 15 Johns., 297; *Smith* v. *Fenner*, 1 Gall., 170. The alterations were made before probate. The will presented in the Superior Court was not identical with that from which we took the appeal. The jury should have been informed that the presumption is against a party who thus behaves with a will.

*G. G. Sill*, contra.

1. The witnesses Hayden and Barber were competent. *Cornwell* v. *Isham*, 1 Day, 35; *Clark* v. *Hoskins*, 6 Conn., 106; Gen. Statutes, tit. 18, ch. 11, sec. 3.

2. The relations which operate to change the general rule that the burden of proof is on those alleging undue influence,

did not exist in this case; Mr. Hayden was neither the attorney nor the confidential adviser of the deceased. The motion does not show any confidential relation and this court will not infer any. *St. Leger's Appeal from Probate*, 34 Conn., 434; *Baldwin* v. *Parker*, 99 Mass., 79; *Barry* v. *Butlin*, 1 Curteis Eccl. R., 638.

3. As to the alteration in the will, there is no question of law. The parties went to trial on the issue whether the will was duly signed by the testator and whether he had the capacity to make a will; the jury having determined both these questions in favor of the appellee, the appellants can not raise the question here. Besides this, even admitting that the rule in Pigot's case has any application to the facts of this case, the alteration was an immaterial one and did not affect the will. *Malin* v. *Malin*, 1 Wend., 625; *Jackson* v. *Malin*, 15 Johns., 297; *Wood* v. *Wood*, 1 Phillemore, 357.

CARPENTER, J. The will of Henry Drake is contested mainly on the ground that it was obtained by undue influence. The jury sustained the will, and the appellants ask for a new trial for a misdirection. The material facts are these:—The testator left no family, his next of kin being brothers and sisters, who lived but a few miles from him. They were not informed of his dangerous sickness and knew nothing of his intention or desire to make a will until after it was made. It was made five days before his death and while he was "suffering from severe disease."

H. S. Hayden, Esq., at the request of the testator, wrote the will, and he "was the only person who claimed to have conversed with the testator, or to have had any interview with him about the same." What occurred at these interviews, and what conversation passed between them on the subject of the will does not appear.

The testator's estate amounted to about fourteen thousand dollars, of which about ten thousand dollars was given to the wardens and vestry of Grace Church.

Said Hayden was at the time a vestryman of Grace Church, and was made sole executor of the will. He was also "an

active member of said Grace Church, and deeply interested in its prosperity, and was in the habit of contributing liberally to its support." He and another vestryman of said church were two of the witnesses to the will.

It was also proved that the persons described in the third clause of said will as brothers and sister were in fact the half nephews and half niece of the testator. After the death of the testator, and before the will was admitted to probate, Hayden altered it by erasing the words "brothers" and "sister" and inserting in lieu thereof respectively the words "nephews" and "niece," and in that condition it was admitted to probate and recorded. Afterwards, and before the trial in the Superior Court, he again changed it, so that it now reads as it was originally written, and also changed the record thereof.

A question was made in the court below whether the two vestrymen of Grace Church were competent witnesses. That question and the kindred one whether the statute making legacies to subscribing witnesses void, removes the disqualification, we pass by, and will consider only the question of undue influence.

The appellants made three several requests, that the court should charge the jury on the subject of undue influence, as follows:

That as the witnesses "were vestrymen of said Grace Church, as legatee under said will, the situation and conduct of the witnesses to said will required explanation; that their testimony was subject to suspicion, and that the appellees were bound to show by the preponderance of evidence that every thing connected with the instrument was free from impropriety and any unfairness."

Also, that the law upon the facts "raised a sufficient presumption of undue influence to change the burden of proof, and cast upon the appellees the duty of showing that every thing connected with the instrument was free from unfairness and impropriety."

Also, "that as fraud and undue influence are not ordinarily susceptible of direct proof, such undue influence may be inferred from the nature of the transaction alone, and that

the jury had a right to infer undue influence from the facts aforesaid "

The court did not comply with any of these requests, but, as the record states, " upon all the claims of the appellants as to undue influence and unfairness, the court instructed the jury that the burden of proof was on the appellants; that if they should find that from any cause or by any means the testator was induced to act contrary to his wishes, and to make a different will and disposition of his estate from what he would have done if left entirely to his own discretion and judgment, that his free agency and independence were overcome, that by some dominion or control exercised over his mind he was constrained to do what was against his will, and what he was unable to refuse and too weak to resist, then they should find in favor of the appellants."

We will not undertake to say that it was the duty of the court to charge the jury precisely as requested and in the language of counsel; nor will we say that the substance of every part of the requests should have been given to the jury. Some things contained in them, especially in the first two, may be objectionable, or at least may be understood in an objectionable sense.

From the charge as given we think that the jury must have received the impression that it was the duty of the appellants to prove affirmatively, and by direct proof, that the " testator was induced to act contrary to his wishes, and to make a different will and disposition of his estate from what he would have done if left entirely to his own discretion and judgment; that his free agency and independence were overcome;" and that " he was constrained to do what was against his will, and what he was unable to refuse and too weak to resist."

From the omission to charge that undue influence might be inferred from the nature of the transaction alone the jury probably supposed that they had no right to infer undue influence from the facts and circumstances proved and admitted.

The substance of the request as applicable to this part of the case is, that direct proof is not essential, but undue influ-

ence may be inferred from circumstances, and that the jury had a right to infer it from the circumstances of this case.

The first part of this last request is unexceptionable if we regard its meaning as just stated. The language employed by counsel—"may be inferred from the nature of the transaction alone," if interpreted strictly may not be technically accurate, for the "nature of the transaction" is distinguishable from the circumstances attending it. But that construction is too narrow. The language was evidently used in a broader sense and included in its meaning the attending circumstances. In that sense it was manifestly used in *Tyler* v. *Gardiner*, 35 N. York, 594, from which case the expression was borrowed. It is apparent also from the last clause, which is to be considered in this connection, in which it is claimed that undue influence may be inferred "from the facts aforesaid," and not from the abstract nature of the transaction. As thus understood it was a proper request, and should have been complied with, provided the circumstances are such as to render such a charge proper. Whenever there is evidence tending to prove every material point involved in the issue we suppose it is the right of either party to have the jury pass upon it. If therefore the circumstances of this case were of such a character as to afford some evidence that there was undue influence the appellants had a clear and unquestionable right to have the jury say whether it was sufficient. It only remains for us to inquire whether such circumstances existed.

A will written by a party benefited by it was void by the civil law. At common law such a will is not void, but proof may be received to show that the paper is in fact the will of the decedent. The amount of proof required varies with the circumstances. If the interest is small in proportion to the whole estate, and the decedent at the time of making the will was in health, and in the possession of his faculties, slight proof will suffice. On the other hand, if his mind is feeble and the party drawing the will takes a considerable portion of the estate to the exclusion of heirs, proof of the most conclusive nature will be required.

The following extracts from eminent English jurists will illustrate and sustain this position.

"The presumption also is strong against an act done by the agency of a party benefited; the act is not actually defeated, as it was by the civil law, provided the intention can be fairly deduced from other circumstances. Though the court will not presume fraud it will require strong proofs of intention." Sir John Nicholl in *Billinghurst* v. *Vickers*, 1 Phillimore, 187.

"The court is always extremely jealous of a circumstance of this nature. By the Roman law *Qui se scripsit heredem* could take no benefit under a will. By the law of England this is not the case; but the law of England requires in all instances of the sort that the proof should be clear and decisive; the balance must not be left *in equilibrio;* the proof must go not only to the act of signing, but to the knowledge of the contents of the paper. In ordinary cases this is not necessary; but when the person who prepares the instrument, and conducts the execution of it, is himself an interested person, his conduct must be watched as that of an interested person; propriety and delicacy would infer that he should not conduct the transaction." *Parke* v. *Ollat*, 2 Phillimore, 323. The same doctrine is found in *Ingram* v. *Wyatt*, 1 Hagg., 384.

A few years later Sir Herbert Jenner, in *Barry* v. *Butlin*, 1 Curteis, 614, said, "that where a paper has been drawn up by a person for his own benefit, or where he takes a considerable benefit under it, the presumption lies strongly against the act, and it requires to be proved by satisfactory evidence dehors the instrument, that it was the free and voluntary act of a capable testator and executed with a full knowledge of its contents and effect. This presumption is still stronger where an only son is excluded, and requires to be removed by clear evidence of rational motives in the deceased to make such a disposition."

From this decision an appeal was taken to the Privy Council and the sentence of the prerogative court was affirmed. Mr. Baron Parke stated the rule as follows: "That if a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court and calls upon it to be vigilant and jealous

in examining the evidence in support of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed and it is judicially satisfied that the paper propounded does express the true will of the deceased." 1 Curteis, 637.

The same rule has been adopted in the state of Georgia. *Beall* v. *Mann*, 5 Geo., 456; *Hughes* v. *Meredith*, 24 Geo., 325; *Simpler* v. *Lord*, 28 Geo., 52. Also in New York. *Lee* v. *Dill*, 11 Abbott's Practice R., 218; *Leacroft* v. *Simmons*, 3 Bradf., 35; *In re Welch*, 5 Bradf., 244; *Langton's Will*, 1 Tucker's Sur. Reports, 301; *Tyler* v. *Gardiner*, 35 N. York, 594; *Delafield* v. *Parish*, 25 N. York, 35.

Had Mr. Hayden himself been the legatee instead of the church this principle would clearly apply. Perhaps no decision can be found which carries the doctrine so far as to apply it to a case like this. There are those however which are nearly analogous. In *Tomkins* v. *Tomkins*, 1 Bail., 96, a mere interest as guardian was considered sufficient to require the application of the rule. "The rector of a church which is a residuary legatee in a will, who has the nomination to two scholarships created by it in a theological seminary, who procured the will to be drawn, was named therein as sole executor thereof, and superintended its execution, is a person so benefited by it as to require an investigation as to its spontaneous character. The degree of that interest is immaterial except perhaps as to the weight of evidence required to prove volition." *In re Welch*, 5 Bradf., 238. In *Langton's Case*, supra, the testator was a man of weak mind. A church was the chief legatee. The only persons cognizant of the drawing of the will were the clergymen and their counsel, and the will was prepared without openness or publicity. The principle was applied.

But we do not intend to hold that the interest of Mr. Hayden is such an interest as is contemplated by the authorities cited above. We leave that an open question. Nevertheless that he was benefited in a certain sense, and was to a considerable extent interested in behalf of this will, is obvious. That such benefit and interest were circumstances to be con-

sidered and weighed by the jury ought not to be doubted. More than two-thirds of the whole estate, amounting to about ten thousand dollars, was given to the church. Mr. Hayden was a vestryman, and as such had a voice in the management of the fund thereby created. As a member of the church he was "deeply interested in its prosperity, and was in the habit of contributing liberally to its support." The income of the proposed fund would take the place in part of his own contributions. As a member of the church he was less liable to taxation, and the necessity for his voluntary contributions was materially diminished. To this pecuniary interest may be added his interest in, and natural desire for, the material welfare of the church with which he was connected.

The fact that he took an unusual interest in the establishment of this will is apparent from the circumstance that when he discovered that some of the testator's relatives were incorrectly described he changed the will in that respect, and after it had been proved and recorded as altered, he changed it back and changed the record to correspond.

The deceased was an unmarried man. His brothers and sister were the natural objects of his bounty. They lived but a few miles from him, but were not notified of his sickness, and were not present at the making of the will, and received by it but a small portion of his estate.

The will was executed when he was near his end, and while he was "suffering from severe disease." That his mind may have been seriously affected, so that he was not able to comprehend the scope and effect of the instrument he signed, is obvious from the circumstance that his half nephews and half niece were described therein as brothers and sister. If he was unable to comprehend the relationship existing between himself and these legatees, or, if comprehending it, he paid so little attention to the terms of the will as not to notice such a glaring misdescription, it affords, unexplained, strong evidence that his mind was very much enfeebled and in a condition to be easily influenced.

All these circumstances are susceptible of explanation if the facts will warrant it, so as to break or destroy their force

as evidence against the validity of the will.   Mr. Hayden, the only person who knows all about the origin of this will, could have stated all the circumstances to the jury.   The reason, if any existed, why the relatives were not notified, and why they were practically disinherited, could have been shown.   If the testator, by reason of being a communicant of Grace Church, or for other cause, had manifested an interest in its welfare, and his course of life had been such as to lead to a reasonable expectation that it would receive a large portion of his estate, that could have been shown.

The motion fails to disclose any explanation of these circumstances.   If none was in fact given, that of itself adds materially to their weight.   If under these circumstances the jury had pronounced against the will, the evidence would have sustained the verdict.   We think therefore that the appellants were entitled to the instruction asked for, that undue influence might be proved by circumstantial evidence.   That not having been given they are entitled to a new trial.

In this opinion PARK, C. J., and GRANGER, J., concurred; PARDEE and HOVEY, Js., dissented.

[NOTE.—Judge HOVEY sat in this case in the place of Judge LOOMIS who was absent.]