MARY GRAHAM *vs*. BRIDGET BURCH and others.

July 1, 1890.

Conveyance—Undue Influence—Evidence.—Proof of the exercise of un-
due influence, procuring the execution of a conveyance of real estate, may
be made by circumstantial evidence.

Same—Conveyances Set Aside.—Evidence *held* sufficient to justify a find-
ing by the trial court· that conveyances by an infirm old man, with im-
paired faculties, to a daughter and to her infant children, of his entire
estate, to the exclusion of another daughter from any participation, were
procured by undue influence.

Same—Deed without Consideration — Innocent Grantee.—Undue in-
fluence will avoid a conveyance procured by that means, even though the
grantees be innocent, if they have not paid a valuable consideration.

Appeal by defendants from an order of the district court for Ram-
sey county, *Otis*, J., presiding, refusing a new trial.

*H. J. Horn* and *Lawler & Durment*, for appellants.

*John D. O'Brien*, for respondent.

DICKINSON, J.[1]  The plaintiff, Mrs. Graham, and the defendant
Mrs. Burch, are sisters, the daughters and heirs-at-law of James
Burns, who died in December, 1888, at the age of 73 years.  The
defendants Mary Burch and Joseph Burch are infant children of
Mrs. Burch.  This action is prosecuted to avoid two deeds of convey-
ance executed by Burns in May and December, 1887; one of the
deeds conveying to Mrs. Burch a part of a lot of land in the city of
St. Paul, the other conveying to her said infant children the remain-
der of the lot owned by the grantor.  These deeds are sought to be
avoided on the ground that their execution was procured by the ex-
ercise of undue influence by Mrs. Burch.  The real question on this
appeal is whether the finding of the trial court, to the effect that the
execution of the deeds was thus procured, was sustained by the evi-
dence.  The case places before us the facts and circumstances here-

after stated, concerning some of which there is no dispute, and all of which we regard as reasonably supported by the evidence:

Burns resided in St. Paul for many years prior to his death. The land in question was of the value of $12,000, and, at the time of the conveyances under consideration, constituted, substantially, all the property belonging to Burns. The land was covered with buildings, from which he derived a considerable rent. Mrs. Graham and Mrs. Burch had resided for many years in California. In the spring of 1886, after the death of Burns's wife, both the sisters came from California, Mrs. Burch bringing, also, her two infant children, above referred to; and they all took up their abode with Burns, at his home. Mrs. Burch always after that remained there, until the death of her father. Mrs. Graham returned to California in September, 1886; it being then understood, and in accordance with her father's request, that she should come back to St. Paul, and take her father to California, with her sister also, for future residence. In accordance with that arrangement, she did return to St. Paul, after an absence of some two months; but in the mean time, without any apparent cause, her father seems to have become affected with some prejudice against her, and did not then wish her to come. However, kindly feelings were re-established, and she remained with her father until January, when she returned to California, and there remained. For several years prior to his death, Burns used intoxicating liquor constantly and to excess, living chiefly upon such stimulants. He was infirm and feeble in health, of an excitable temperament, forgetful, and childish. Animosity and prejudice were easily excited in him, and his intellect became enfeebled, so that he was easily influenced by those in whom he confided. His daughter Mrs. Burch secured his entire confidence. He intrusted to her the care and expenditure of his money. He confided in her judgment, was subject to her control, and submissive to her will. It may be taken to have been the purpose of Burns, as late as January, 1887, to leave his property, upon his death, to both his daughters; for at that time he executed a will devising to them this land in separate parcels. This was shortly before the plaintiff finally went back to California. The case suggests no reason for a change of purpose on his part, unless it is to be attrib-

uted to the influence exerted by Mrs. Burch, and by others at her instance, after her sister had gone away, and when her father came to be wholly in her care, and, as some of the evidence went to show, wholly under her control. That she desired to secure a conveyance of the property to herself, and to exclude her sister from sharing in it, may be justly inferred from her own declarations and conduct, if the evidence bearing upon the fact is to be believed. It was also shown that she actually sought to accomplish this. She procured other persons to intercede with her father upon the subject in her behalf, and to the prejudice of her sister. In May, 1887, within a little more than three months after Mrs. Graham went away, and but little longer than that after the execution of the will, Burns executed an absolute conveyance of the larger part of this land to Mrs. Burch, without consideration; and, in December of the same year, he conveyed the remainder of it to her said infant children by absolute deed, and without consideration, except the nominal consideration of one dollar, which Mrs. Burch placed in the hands of the children, to be handed to her father upon the execution of the deed. By these two conveyances the grantor completely divested himself of substantially all his property, he being then about 72 years of age. Nor does he appear to have been then in expectation of speedy death. He lived a year after that. His declarations manifested a prejudice against the plaintiff, without apparent cause, and not consistent with his former disposition towards her. Even after his conveyance of the land to the children, he made declarations indicative of a purpose to sell the property as though it were still his own.

We deem the case, only the principal features of which we have referred to, to have justified the finding of the trial court that Mrs. Burch sought, by undue influence, to secure for herself and children all of her father's property during his lifetime, without consideration, and to prevent the plaintiff from receiving any part of it; that she was able to and did unduly influence him to that end, in procuring the execution of the deeds in question; and that, by reason thereof, such deeds were not executed as his free and voluntary acts. The relation of Mrs. Burch to the grantor; her desire to secure the property, with proof of some efforts directed to the accomplishment of

that end; the opportunities arising from her living with him, and from his dependence upon her care; his age, mental condition, and infirmities; the control which she exercised generally over his conduct; the improvident and inequitable nature of the conveyances, not only impoverishing himself, but virtually disinheriting one of his two daughters; the change in his disposition towards the plaintiff, and of his purposes respecting the disposition of his property; and the value of the property thus disposed of,—may not have been sufficient to necessarily compel the conclusion that, in this matter, she had overpowered and subjected his will to her own, overbearing his own judgment and free will; but these circumstances at least support and justify that conclusion of the trial court, even though direct proof of the exercise of undue influence be wanting; for the ultimate fact of undue influence, which is a species of fraud, may be established by circumstantial evidence. *Woodbury* v. *Woodbury*, 141 Mass. 329, (5 N. E. Rep. 275;) *Drake's Appeal*, 45 Conn. 9; *Tyler* v. *Gardiner*, 35 N. Y. 559, 594.

The fact of undue influence having been established, it should be deemed to avoid the conveyance, not merely as to a grantee who has procured it by such means, but also, in the absence of a valuable consideration paid, as to innocent grantees not chargeable with such fault. *Huguenin* v. *Baseley*, 14 Ves. 273; *Whelan* v. *Whelan*, 3 Cow. 537; *Davis* v. *Calvert*, 5 Gill & J. 269, 302; *Harris* v. *Delamar*, 3 Ired. Eq. 219.

Order affirmed.