KLAAS GOEMAN POTT and Another v. H. J. HANSON and Others.[1]

January 7, 1910.

Nos. 16,426—(158).

**Exchange of Property — Fraud — Laches.**

In an action to recover property alleged to have been obtained by defendants through false and fraudulent representations, it is *held:*

[1] Reported in 124 N. W. 17.

1. That the findings of the trial court that defendant fraudulently and falsely represented the condition and value of the property conveyed by him to plaintiffs in exchange for theirs, and that such representations were made with the intent to deceive and defraud plaintiffs, are sustained by the evidence.

2. That the fraud was not ratified or confirmed by plaintiffs with knowledge of all the facts.

3. That plaintiffs' right of action was not barred by an unreasonable delay in bringing the action.

4. That the findings of the court to the effect that the property received from plaintiffs had been conveyed to one of the defendants without consideration and for the purpose of putting it out of the reach of plaintiffs are sustained by the evidence.

**Reply Unnecessary.**

A reply is unnecessary in any case where its allegations would be a mere repetition of those contained in the complaint.

Action by Klaas Goeman Pott and Heika C. Goeman Pott against H. J. Hanson, Magdalena Hanson, Charles V. Holmstrom and J. S. Pomeroy in the district court for Renville county to rescind an exchange of land in Kandiyohi county for capital stock in the Universal Art Company, and to decree that plaintiffs are the owners of the real estate described in the complaint, and for $3,000, the value of the real property conveyed by H. J. Hanson to A. H. Rosenquist. The case was tried before Powers, J., who made findings, as mentioned in the opinion, and as conclusions of law dismissed the action as to defendant Pomeroy, rescinded the exchange of property and found that defendants Hanson held the legal title to the lands described, save the lots conveyed to one Rosenquist, in trust for the plaintiffs, and ordered judgment against H. J. Hanson in the sum of $3,000 in lieu of the land sold to Rosenquist. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*W. E. Dampier,* for appellants.

*Daly & Barnard* and *N. L. Erickson,* for respondents.

BROWN, J.

The facts in this case, as disclosed by the findings of the trial

109 M.—27

court, are as follows: On the date of the transaction involved in this action, plaintiffs, husband and wife, were the owners of and in possession of certain real property situated in Kandiyohi county, consisting of farm land and village lots, of the value of about $15,000, over and above incumbrances. Defendant H. J. Hanson was the owner of one hundred sixty shares of the stock of the Universal Art Company, a corporation organized under the laws of the state, and engaged in manufacturing pictures, picture frames, mouldings, calendars and other art goods at Columbia Heights, near Minneapolis. Hanson was the general manager of the affairs of this corporation, and had been from its organization. He advertised his shares of stock for sale or exchange, and plaintiff Goeman Pott appeared as a prospective purchaser. After some negotiations, plaintiffs exchanged their real property for Hanson's stock in the corporation, and the transaction was consummated by the execution and delivery of proper conveyances and documents evidencing the same on August 19, 1907.

To induce plaintiffs to make the exchange, defendant Hanson represented to them that the corporation was doing a prosperous business; that it paid a dividend of five per cent. the preceding year; that the company then had on hand stock and material of the value of $14,000, $6,000 in value of original paintings, $6,000 in copyrights, and about $8,000 worth of outstanding book accounts; that the company then had on file orders for goods to the amount of $10,000, to be filled before the following Christmas; that the total indebtedness of the company, exclusive of a mortgage on its factory, was $2,000; and that its books correctly disclosed the true condition of its financial affairs.

The court found that these representations were in many material respects false and untrue; that the art company did not have a prosperous and paying business; that it had not paid a dividend of five per cent. the preceding year to its stockholders, or at any time; that its stock in trade was worth much less than Hanson represented it; that its copyrights, represented to be of the value of $6,000, were of little or no value; that it had, instead of $10,000, in unfilled orders, only about $5,000; that its outstanding book

accounts, instead of being $8,000, did not exceed $2,000; that its books were not properly kept; that its total indebtedness, exclusive of the mortgage upon its factory, instead of being $2,000, exceeded $15,000; that, instead of being a prosperous concern, it was in fact insolvent and unable to meet its obligations, and in the following February was placed in the hands of a trustee in bankruptcy proceedings, and its affairs wound up. The court also found that at the time the contract was entered into plaintiff Goeman Pott, who acted for his wife as well as for himself, "knew nothing of the art business, or the business of the Universal Art Company; he knew nothing about bookkeeping and did not examine the books, and could not have learned or found out the financial condition, if he had examined them; but he believed and relied wholly upon the statements so made to him by said H. J. Hanson, and was thereby induced to make the contract;" and, further, that the statements and representations were fraudulently made by Hanson, with the intent and purpose to cheat and defraud the plaintiffs.

After the completion of the exchange, plaintiff Goeman Pott was installed as president of the art company, and thereafter managed its affairs at a salary of $100 per month until it was adjudged insolvent in February, 1908. As stated, the transaction was closed August 19, 1907. On September 24, 1907, plaintiffs learned to some extent the true condition of the corporation, and to settle and adjust the controversy which then arose between plaintiffs and Hanson by reason of this discovery the parties entered into an additional agreement, by which plaintiffs agreed to turn back to Hanson thirty shares of the art company's stock, and Hanson in turn agreed to transfer to plaintiffs a part of the property conveyed to him, the same to be sold immediately, and the proceeds applied in payment of an assessment upon the art company's stock. This contract contained further provisions, as follows: "Said parties mutually agree that any and all differences, which existed between them, because of other dealings and transactions, in connection with the transfer, by said second party, of one hundred sixty shares of the capital stock of the Universal Art Company to said first party and the transfer of certain real estate by said first party

to said second party, shall be and are hereby settled. · Said parties mutually agree, each with the other, to hereby release his heirs, executors, administrators, estates and effects from all sums of money, accounts, actions, claims and demands up to the date of this agreement."

The court further found that this agreement was never carried into execution. The stock was not retransferred to Hanson, nor did Hanson reconvey the property to plaintiffs, and Hanson subsequently repudiated and wholly ignored the contract.

The court also found that, subsequent to the completion of the exchange of the properties, Hanson and wife conveyed the property acquired by them in the transaction to defendant Holstrom, and the latter immediately conveyed a ·portion thereof to defendant· Pomeroy, as security for a loan made by the latter to. Hanson; ·that the remainder of the property Holstrom conveyed to defendant Magdalena Hanson, wife of H. J. Hanson, and that she and her husband conveyed the same to Pomeroy as further security for said loan. The indebtedness so secured was paid in October, 1907, and Pomeroy reconveyed all the property, at the instance and request of H. J. Hanson, to Magdalena Hanson, and she now holds title thereto, except certain lots which the Hansons subsequently conveyed to an innocent purchaser, and which are not involved in this action. The court found that the conveyance of the property to Mrs. Hanson in the manner stated was for the purpose of defrauding plaintiffs, and that she paid no consideration therefor.

As conclusions of law, the court found that· plaintiffs were en-. titled to a reconveyance of the property still in the name of Mrs. Hanson, and to judgment against Hanson for the sum of $3,000, the value of that portion conveyed by the Hansons to an innocent third person. Judgment was ordered accordingly. Defendants then moved for a new trial, and appealed from an'order denying it.

It is contended ·by defendants (1) that the findings of the trial court that H. J. Hanson fraudulently represented to the plaintiffs the condition of the .affairs. of· the art company, and to induce and· bring about an exchange of the properties, are not sustained by the evidence; (2) that plaintiffs ratified and confirmed the trans-

action with knowledge of the fraud, if any was committed, by the supplemental agreement of September, by which the parties purported to settle their differences; and (3) that plaintiffs' delay in bringing the action constitutes such laches as to bar their right to relief.

1. Upon the first question, namely, whether the findings of the trial court are sustained by the evidence, we have only to say that a careful examination of the record discloses ample evidence to sustain the conclusion of the trial court. Hanson was the manager of the art company from its organization, and in position to know accurately its financial condition and the value of its property, prospects, and business future. The concern was practically bankrupt when he disposed of his stock to plaintiffs, and he must have known that fact. It does not matter whether plaintiffs could have ascertained the true condition of the affairs of the art company by careful investigation. They had the right to rely upon the representations made to them by one in a position to know the condition, and are not to be defrauded of their property by their reliance upon his good faith and honesty. Collins v. Jackson, 54 Mich. 186, 19 N. W. 947; Crosland v. Hall, 33 N. J. Eq. 111; Bank v. Hiatt, 58 Cal. 234; Union v. Hunt, 76 Mo. 439; Stewart v. Stearns, 63 N. H. 99, 56 Am. Rep. 496; Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138; Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360.

2. The special agreement of September was not a ratification or confirmation of the fraud with knowledge of all the facts. Plaintiffs had not at that time learned the true condition of the art company's business, and the special agreement of September by which the parties made an attempt to adjust their differences was never performed or carried out. It was but an effort to settle matters between them, but, not having been executed, has no greater effect than though never entered into, and amounts to nothing more than an offer of compromise.

3. The court found that plaintiffs did not discover the full extent of the fraud until some time after the art company was thrown into bankruptcy, and that they brought this action within two

months thereafter. It is clear that this delay was not of such a nature as to justify the conclusion of laches, as a matter of law. There was no such unreasonable delay as to warrant that conclusion. Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134, is not in point, for there it appeared that the defrauded party had full knowledge of the facts, and with such knowledge delayed for more than six months the bringing of his action.

4. The court below was also justified in finding that Mrs. Hanson paid no consideration whatever for the property, and that it was conveyed to her for the purpose, if possible, of placing it beyond the reach of plaintiffs and defrauding them. She was not produced as a witness at the trial, and the facts disclosed made it incumbent upon her to make a showing in court of her good faith. Newton v. Newton, 46 Minn. 33, 48 N. W. 450. Though the allegations in her answer that she purchased the property for value and in good faith were not denied by a reply, they do not stand admitted. A reply was wholly unnecessary. The complaint alleged that the property was conveyed to Mrs. Hanson without consideration and to defraud plaintiffs, and, had a reply been interposed, it would have been necessarily a repetition of the allegations of the complaint. It was therefore unnecessary. Craig v. Cook, 28 Minn. 232, 9 N. W. 712.

Order affirmed.