## HERBERT H. BIGELOW and Others v. HENRY E. BARNES.[1]

April 11, 1913.

Nos. 17,885—(50).

**Rescission of contract — representation as to future acts.**

1. A representation of intention as to future acts or events, not having been falsely made with the purpose to deceive, is not, though the act or event did not occur as represented, a sufficient ground upon which to predicate a charge of fraud, or be made the basis for the rescission of a contract induced and brought about by the representation.

**Same — future publication of serial.**

2. The agent of a corporation, publisher of a certain series of law books to be published at stated periods, to induce defendant to subscribe therefor, represented that the company would continue the publication of the books so long as another publishing concern should continue to publish certain of its

---

[1] Reported in 140 N. W. 1032.

---

Note.—The question of future promise as fraud is discussed in notes in 10 L.R.A.(N.S.) 640 and 24 L.R.A.(N.S.) 735. And as to the right to rely upon representations, see note in 37 L.R.A. 593.

books. There was no bad faith on the part of the agent, nor was there any intention to deceive the subscriber. The publication of the books was subsequently discontinued by the publishing company. *Held*, that the representation, though not performed, furnished no basis for a rescission of the contract as to books published and delivered to defendant thereunder.

**Failure of consideration.**
3. Nor did the discontinuance of the publication constitute a failure of consideration for the contract.

Action in the municipal court of Minneapolis by the receivers of Keefe-Davidson Company to recover $94, balance due upon the purchase price of certain law books. The answer alleged an agreement on the part of the corporation to deliver to plaintiff certain volumes and advance sheets continuously so long as defendant should desire the same; that the corporation ceased to deliver the advance sheets and defendant believed the publication had been abandoned; that defendant had 16 volumes on hand which were of no use or value to defendant, unless the publication was continued; that only 16 volumes in all were ever delivered to defendant, who offered to return the same to plaintiffs. The reply denied the new matter in the answer. The case was tried before Leary, J., who made findings and ordered judgment in favor of plaintiffs. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Frank W. Booth,* for appellant.

*A. D. Smith,* for respondents.

BROWN, C. J.

The Keefe-Davidson Company is a corporation, and was heretofore engaged in the publication and sale of law books. Among other works it published and sold to subscribers "Current Law," a work designed to furnish to lawyers a digest of or reference to recent decisions of the several courts of the United States; the volumes thereof being issued and delivered at stated periods. Defendant subscribed for the work, agreeing to pay therefor a stated amount for each volume as delivered. A number of volumes were issued and delivered to him, for which he neglected to pay. The corporation ceased all business operations in January, 1912, and plaintiffs were

then duly appointed and commissioned by the district court of Ramsey county receivers to wind up its affairs. They brought this action to recover the balance due for the books so sold to defendant.

When the company went out of business, the publication of the books was permanently suspended, and none have been issued since that time. Defendant alleged this suspension of publication as a breach of the contract, and insisted in the court below, and again in this court, that it constitutes a complete defense to the action. Defendant offered to return the books. The trial court overruled this defense, ordered judgment for plaintiffs, and defendant appealed from an order denying a new trial.

The defense is predicated upon certain representations claimed to have been made by the agent of the company at the time defendant entered into the contract for the books. The contract was in the form of a written order to the publishers to deliver the books to defendant as published. The order was silent upon the question how long in the future the company would continue to publish the work. But defendant contends that as a part of the transaction, and to induce him to enter into the contract, the agent represented that the publication would continue "as long as the Northwestern Reporters would be published" by the West Publishing Company. He testified that he relied upon this representation, and was induced thereby to enter into the contract, and he contends that the discontinuance of the publication was a breach of the contract, entitling him to rescind the same by returning the books received. In this contention we do not concur.

The law is well settled that a representation of intention or expectation as to future acts or events, although relied upon and the inducing cause of the contract, is not sufficient ground for the charge of fraud, or for the rescission or repudiation of the contract, merely because the represented act or event did not take place. Such representations are not ordinarily treated as assertions of existing facts, but only of things to occur in the future, and amount to nothing more than mere promises or conjectures of future events, although it has often been held that such representations, where falsely made and with intent to deceive, constitute a fraud entitling the deceived party to his proper redress. 9 Cyc. 418.

In this case there is no claim of deception or fraud. So far as disclosed by the record, the statement by the agent that the work would continue to be published so long as the Northwestern Reporter was published was made in good faith and expressed the then expectations of the company. There was no intention falsely to deceive, and the representation comes within the general rule above stated, and constituted, at most, a mere expression of the intention of the company to continue indefinitely the publication of the books. This furnishes no basis for fraud, or upon which the right to rescind the contract may be predicated. McElrath v. Electric Investments Co. 114 Minn. 358, 131 N. W. 380; Albitz v. Minneapolis & P. Ry. Co. 40 Minn. 476, 42 N. W. 394; 9 Cyc. 418; Shattuck v. Robbins, 68 N. H. 565, 44 Atl. 694; Piedmont v. Piedmont, 96 Ala. 389, 11 South. 332; State v. Gates, 114 Iowa, 323, 86 N. W. 311; Cerny v. Paxton & Gallagher Co. 78 Neb. 134, 110 N. W. 882, 10 L.R.A. (N.S.) 640, and authorities cited in the note.

Just how long the Northwestern Reporter would continue to be published was at the time and still is a matter of conjecture, depending upon conditions to arise in the future, impossible to foretell. Whether the Keefe Company, an independent concern, would remain solvent, and a going concern, and in position to keep pace with the West Publishing Company, was at the time this contract was entered into a mere matter of speculation, and an uncertainty known equally to both parties. The Current Law had no connection with the Northwestern Reporter, though it cited and referred to the decisions therein reported. Its purpose was to cite all current decisions of state and Federal courts, and it was not indispensable to the use of the West Company publications. It is clear, therefore, that the alleged representations were not of a character upon which reliance might be had by a purchaser of the Current Law. Nor did the failure to continue the publication thereof amount to a failure of consideration as to the books actually published and delivered.

The trial court was therefore right in ordering judgment for plaintiffs. The court based its decisions upon other grounds, which were sound, but we do not deem it necessary to consider them in this opinion.

Order affirmed.