## JOHN WAGNER v. HARRY C. MAGEE.[1]

June 25, 1915.

Nos. 19,184—(114).

**Ratification of contract induced by fraud.**

1. One who has been induced to enter a contract through fraudulent representations as to who is the other party thereto, or as to the provisions of the contract, may treat it as void. But if, after knowledge of the fraud, he sues the party whose contract it purports to be, obtains judgment for damages for a breach thereof, and enforces or compromises such judgment he thereby ratifies and adopts the contract in all its terms as if no fraud had attended its inception.

**Same — finding not sustained by evidence.**

2. The finding that there was no ratification or affirmance of the contract, or of the mortgage executed by the defendant pursuant to its terms is not sustained by the evidence. Nor is the finding supported that the premises constituted plaintiff's homestead at the time he and his wife conveyed the same to defendant in order that she might place the mortgage thereon.

Action in the district court for Ramsey county to cancel a certain

1 Reported in 153 N. W. 313.

mortgage, the foreclosure thereof and the sheriff's certificate of sale of the mortgaged premises. The facts are stated in the opinion. The case was tried before Kelly, J., who made findings and ordered judgment in favor of plaintiff. From an order denying his motion for amended findings and his motion for a new trial, defendant appealed. Reversed.

*Edward C. Stringer, McNeil V. Seymour* and *Edward S. Stringer,* for appellant.

*Drill & Drill,* for respondent.

HOLT, J.

John Wagner, the plaintiff, had purchased lot 29 in block 15 of Eastville Heights Addition to St. Paul on contract. He desired a house thereon, and came in contact with one Charles T. Cardigan, a real estate dealer. Cardigan officed with one Ed. Lofstat, a builder. On October 10, 1908, Cardigan and Wagner entered some agreement whereby the former was to build, or cause to be built, a dwelling house upon said lot for the sum of $1,700; $100 being then paid by Wagner, and a receipt given him by Cardigan stating the balance to be $1,600. It seems that Ed. Lofstat was to build the house, and did build it. The arrangement between Lofstat and Cardigan is not shown. The building progressed and plaintiff made payments until about the middle of January, 1909, when it was so far finished that it could be occupied. At that time plaintiff found fault with the house. He had not fully paid for either lot or house. Money was needed by Lofstat to pay for labor and material. On January 21, 1909, the parties met in Cardigan's office when a contract, Exhibit A, was signed by plaintiff and wife, and, apparently, by Alice Lofstat, a daughter of Ed. Lofstat, also a deed from John Wagner and wife, conveying the lot to Alice Lofstat. The next day this deed and a deed from the Urban Investment Co., the prior record owner, to John Wagner, also dated January 21, 1909, were placed on record. On February 9, 1909, Alice Lofstat executed a mortgage to defendant to secure the payment of $1,000. This was also recorded, and the next month Alice Lofstat conveyed the premises to plaintiff subject to the mortgage, which mortgage

he assumed and agreed to pay. The mortgage was not paid when due. It was foreclosed by advertisement and defendant bid in the premises, and received the sheriff's certificate. Plaintiff brought this action to remove the cloud cast upon his title by the mortgage and its foreclosure. He prevailed and defendant appeals.

The complaint alleged plaintiff's ownership and possession of the lot, and that while so owned and possessed the mortgage thereon was executed by Alice Lofstat without right or authority. The record of the mortgage, its foreclosure, and the execution and the record of the sheriff's certificate were set out. It was also averred that plaintiff knew nothing of the existence of the mortgage until about its due date, that then, upon the advice of his counsel, one Thomas Novotny, he delayed this suit until the defendant should proceed to foreclose. The answer admitted plaintiff's ownership on March 8, 1909, subject to defendant's mortgage; alleged that, shortly before the mortgage was taken, plaintiff conveyed the premises to Alice Lofstat in order that she might place the mortgage thereon; that it was made with the knowledge and consent of plaintiff and accepted by defendant in good faith; that after it was made Alice Lofstat, the mortgagor, conveyed the premises to plaintiff subject to the mortgage; and that plaintiff assumed and agreed to pay it. The reply admitted the record of the deed from plaintiff and wife to Alice Lofstat, and the signatures to Exhibit A, and averred that these two instruments constitute the consent and acquiescence to mortgage referred to in the answer, but alleged there never was any consideration for the deed; that plaintiff had no business dealings with Alice Lofstat; that the signatures to Exhibit A and to said deed were obtained by the fraud and trickery of Cardigan, and that Cardigan was then Alice Lofstat's agent, but that plaintiff was ignorant of that fact. Then follow full allegations of a verbal agreement by Cardigan to build the house for plaintiff; that after it was built certain defects and omissions were noticed; that payments had been made, but not in full; that it was then agreed that the defects should be remedied; that the house was to be guaranteed for a year, and that plaintiff should make monthly payments. If he could not pay in full shortly, he was to agree to mortgage the property and

pay for the house. Then follow averments of fraud and misrepresentations, by means of which plaintiff and wife were led to believe that Exhibit A contained this agreement and they were thereby induced to sign it. The court found the allegations of the complaint and reply true, and those of the answer untrue, also found specifically that "John Wagner has never knowingly, intelligently or intentionally or legally ratified or assumed or promised to pay the mortgage described in the pleadings which was placed on plaintiff's land by the Alice Lofstat named in the defendant's answer." Other facts, not perhaps material to state, were found and to the findings a memorandum was subjoined, consisting of more than 10 printed pages. The findings state that the facts set out in the memorandum constitute a part of the findings as if fully set out therein.

The learned trial court's conclusion, that the fraud and misrepresentations of Cardigan and Lofstat induced plaintiff and his wife to execute Exhibit A and the deed to Alice Lofstat, finds support in the evidence, although a finding to the contrary might appear more consistent with surrounding circumstances. We also concur in the finding that defendant in taking the mortgage was not protected as an innocent good-faith purchaser. Plaintiff was then in possession, and we must assume that, if defendant had inquired of plaintiff, the true situation from his view point would have been disclosed.

But we are unable to sustain the finding, above set out, that plaintiff never ratified or promised to pay defendant's mortgage, or the finding that the averment in the answer that the mortgage was made with the full knowledge and consent of plaintiff was untrue. The mortgage was placed upon the property in virtue of Exhibit A, executed by Alice Lofstat, plaintiff and his wife.

We pass by the fact that, when Exhibit A and the deed to Alice Lofstat were executed, plaintiff did not rely upon the honesty of Cardigan, but consulted an attorney, who inserted paragraph five, hereinafter set out, in the contract. Neither shall we attach determining importance to the fact that, very soon after the mortgage was given, plaintiff began to exhibit his documents to several reputable

attorneys and consult them respecting his dealings with Cardigan and Lofstat.

But we come to what, we believe, concludes plaintiff. In August, 1911, he brought an action in the district court of Ramsey county against Alice Lofstat for damages for failure to carry out the provisions of Exhibit A. To the complaint therein was attached a copy of the said exhibit, also a copy of the deed from Lofstat to plaintiff, which was alleged to have been made pursuant to the contract. The trial resulted in a judgment for $650 damages against Alice Lofstat. The judgment was compromised and settled by his attorney. In subsequent proceedings to set aside the compromise and satisfaction of the judgment, Mrs. Wagner made an affidavit supporting her husband, thus indicating that she also had full knowledge of the action and undoubtedly consented to, and was interested in, its prosecution. The compromise was, on April, 1913, after full hearing, permitted to stand, the court being of the opinion that plaintiff had ratified the settlement. Upon this hearing plaintiff was represented by attorneys of high standing.

Further, it appears that plaintiff paid interest on the mortgage for three years, and, when it fell due, negotiated for and obtained from defendant extension of time for one year, upon the payment of ten dollars.

It is true that Alice Lofstat had no personal interest in the matter, her name being used for the convenience of Cardigan and her father, Ed. Lofstat. But that does not alter the situation. It is plain that when the building was ready for occupancy there was need of money to pay for the labor and material that went into its construction. Plaintiff had then paid only a part of the contract price for the building, and, at least, $100 was unpaid upon the lot. To raise the money, Cardigan and Lofstat conceived the plan to vest the title in Alice Lofstat, so that she might place a mortgage thereon, then convey to plaintiff subject to the mortgage. The parties met, as above stated, on January 21, 1909, to arrange matters. A contract was to be made. Plaintiff's contention is that he and his wife were deceived as to the character of the instrument, that they never signed but one paper. Yet neither he nor his wife denies that

their signatures to both the contract and the deed are genuine. By the contract, Exhibit A, Alice Lofstat sold and agreed to convey to plaintiff the lot mentioned for $1,800, $300 of which was therein acknowledged, and thereafter $15 was to be paid monthly, with interest at 6 per cent until all was paid. There was also a provision for insurance of the building at plaintiff's cost for Lofstat's protection primarily, and plaintiff's secondarily. The fourth and fifth paragraphs of the contract, here important, are: "4th. Said Lofstat shall have the right to place a first mortgage upon said property in the sum of $1,000, and when said Wagner shall have paid all of the purchase price of said property above any such mortgage, then said Wagner shall be entitled, at his election, to receive a deed of said property wherein he shall assume and agree to pay such mortgage. 5. The said Alice Lofstat warrants the house constructed on said property to be of good material and workmanship, and guarantees same for one year from date, reasonable wear and damage by fire or the elements excepted." The last line of the contract reads: "$100 to be paid on or before Feb. 21, 1909, to clear up lot." It would seem from this that the last payment of $100 on the purchase of the lot was made by Cardigan and Lofstat when, on January 21, the deed was obtained from the Urban Investment Co.,—the same to be thereafter repaid, thus making the total to be paid by plaintiff $1,800 instead of $1,700.

It is elementary that if one is induced by fraud and deceit to sign a contract it is of no validity as to him. He may ignore it. But if he, with knowledge of the fraud, proceeds to enforce the beneficial provisions of the contract, it is thereby affirmed *in toto*. It becomes his valid contract the same as if the fraud and deceit had never occurred. This holds good whether the fraud or deception related to the nature of the contract, or to the identity of the other contracting party, or to both. Hence plaintiff cannot come into court insisting that he made a contract with Alice Lofstat, secure the enforcement of a provision therein against her, and, thereafter, come back and assert with respect to another provision in the same contract that he is not bound thereby because of fraud in entering it, or that he made no contract with Alice Lofstat. Even a defrauded party may not

take successively inconsistent positions. Addison, Law of Contracts, p. 129; Wheeler v. Dunn, 13 Colo. 428, 22 Pac. 827; Bowen v. Mandeville, 95 N. Y. 237. "Taking any steps to enforce the contract was a conclusive election not to rescind it on account of anything known at the time." Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, 5 L.R.A. 693. "A contract cannot be repudiated in part and affirmed in part." Merrill v. Wilson, 66 Mich. 232, 33 N. W. 716; Bedier v. Reaume, 95 Mich. 518, 55 N. W. 366.

If plaintiff was deceived, he discovered the deception within six months after its occurrence. He had a duplicate of the contract in his possession from the time it was made. He exhibited it to, and consulted with, more than one attorney. The contract is simple. It is impossible to escape the conviction that plaintiff and his attorneys knew the terms of that contract, knew of the existence of the deed from the Urban Investment Co. to plaintiff, of the deed to Lofstat, of the mortgage to defendant as authorized by the contract, and of the deed from the latter to plaintiff, wherein he assumed and agreed to pay this mortgage. Therefore it must be held that when the action against Alice Lofstat was begun, prosecuted to judgment, and the judgment settled, it was done with full knowledge by plaintiff of all the facts, and of whatever fraud Cardigan and the Lofstats had been guilty of in the transaction up to March 10, 1909. It follows, as a matter of law, that the contract, Exhibit A, becomes binding in all its terms upon plaintiff, as well as upon Alice Lofstat, notwithstanding plaintiff was induced by fraud to execute it. It is true plaintiff's attorney has been disbarred, but there is nothing here to indicate his incompetency, or that he was in any manner disloyal to his client until after the judgment was obtained. We therefore see no escape from the conclusion that plaintiff with open eyes ratified and accepted Exhibit A, and, having so done, he cannot now repudiate the mortgage and deed executed pursuant thereto.

But, it is said, the premises were the homestead of plaintiff, and the deed thereof to Lofstat is void since Mrs. Wagner's signature thereto was obtained by fraud. Therefore, it is claimed, no title passed to Lofstat which she could mortgage. If the findings include

a finding that the lot was the homestead on January 21, 1909, when Exhibit A and the deeds mentioned were executed, such finding is contrary to the evidence and cannot stand. Mrs. Wagner testified positively that they moved into the house the next day. Plaintiff was uncertain of the date, but testified how, before signing Exhibit A, he came to go to Mayor Lawler's office and consult the attorney who inserted paragraph 5 in the contract, because "Cardigan wanted me to take the house in my own possession." Again "He gave me the special contract and them receipts, that is all I had before I moved into the house." The "special contract" could be no other than Exhibit A. We think there was no warrant for a finding that the premises constituted a homestead when the documents were executed on January 21.

In passing, it may be stated that Exhibit A was always in the possession of plaintiff, or his attorneys. Cardigan appears to have indorsed thereon payments made up to August 11, 1909. Therefrom it appears that on March 5, 1909, Cardigan considered the payments made fully covered all due under the contract, for he indorsed "Cancelled & Paid Mar. 5, 1909." This left only the mortgage, and that was assumed by plaintiff in the deed of March 6, 1909, from Lofstat to him. There is also an indorsement by Cardigan showing the mortgage; a payment thereon of $100 on March 8, 1909; and of $50 on August 11, 1909, together with 6 months interest. Plaintiff also produced receipts showing some of the payments indorsed upon the contract. His testimony is rather uncertain as to what payments were made. Upon this record it is extremely doubtful whether plaintiff will be compelled to pay more than the $1,600 he agreed to pay for the erection of the house, if this mortgage is finally held valid, except as to the $150 he paid to Cardigan upon the mortgage after March 6, 1909. Cardigan was not defendant's agent, and partial payments upon the mortgage are not involved in this action.

We think there has been such an affirmance of the contract with Alice Lofstat pursuant to which the mortgage was made that plaintiff cannot now have it set aside.

The order is reversed.