## ROCHESTER LOAN & TRUST COMPANY v. DELL SIMONTON PETT.[1]

May 16, 1924.

No. 23,955.

**Sufficient circumstantial evidence of undue influence.**

Record examined and *held* proof by circumstantial evidence sufficient to sustain the trial court in holding transactions to have been procured by undue influence.

Action in the district court for Olmsted county by the administrator of the estate of Robert Pett, deceased to annul a marriage, cancel certain deeds and recover $11,500. The case was tried before Callaghan, J., who made findings and ordered judgment in favor of plaintiff, annulling the deeds and for $1,681.43. From an order denying her motion for amended findings and conclusions or for a new trial, defendant appealed. Affirmed.

*Oscar C. Ronken*, for appellant.

*George J. Allen* and *Granger & Clemens*, for respondent.

WILSON, C. J.

Robert Pett's first wife died about 13 years ago. Appellant was the widow of Homer Simonton, a nephew of the first Mrs. Pett, her husband having died about 14 years ago leaving his wife and 5 children. Mrs. Simonton and her children received financial aid from Mr. Pett as they needed it. He purchased a rooming house for her in Rochester, which she later sold. About 9 years ago Mrs. Simonton and her children at the invitation of Mr. Pett, came into his home. She kept house for him until his death. She did not receive wages, but she and her children received the necessities of life. During this time he bought her two automobiles. On May 26, 1921, Mrs. Simonton procured a marriage license. On August 27, 1921, Mr. Pett and Mrs. Simonton were married by a

[1]Reported in 199 N. W. 1.

minister procured by her relatives. He was then a very sick man. He was ill for 8 or 9 months prior to his death and was suffering from a dry gangrene in one of his toes which was quite painful at times. He died intestate on September 9, 1921, at the age of 82. Appellant was then 44 years old.

On September 2, 1921, the Pett homestead was conveyed to Mrs. Pett through her sister, Grace Joslyn. Mrs. Pett procured a lawyer to make the deeds. The first lawyer she saw refused because he thought the daughter of Mr. Pett might want his services. She also went to one Larson living on a farm, worth at least $22,500, on which Mr. Pett had a mortgage of $6,400, and accrued interest in the sum of $294.40, which mortgage with the interest was not due, and opened negotiations resulting in Larson borrowing money to settle this $6,694.40 by paying to Pett $5,000 for which he received a satisfaction of the mortgage, dated September 7, 1921. This mortgage by its terms matured on September 15, 1925. The discount was $1,694.40. Appellant furnished the necessary witnesses and notary. She also called an attorney to come to Mr. Pett, who had him prepare an order for him to sign directing the bank to place the $5,000 received from Larson, less a portion necessary to pay his indebtedness to the bank, to the credit of appellant.

Mr. Pett left as his heirs the wife and a daughter from his first marriage. His daughter had apparently married contrary to his wishes and some 15 or 20 years ago he said that she would never get any of his money, but the record does not disclose that he had ever made this statement since the death of his first wife. The daughter lives in California. The Rochester Loan & Trust Company is the administrator of his estate.

This action is brought against the wife to set aside the transfers above referred to and to recover money which she received. The court found in favor of plaintiff on the ground of undue influence, and defendant appeals from an order denying her motion to amend findings or for a new trial.

The appeal attacks only the sufficiency of the evidence to sustain the decision of the court. We have detailed the facts as they have become important in passing upon the matter now before us. The

conclusion of the trial court to the effect that appellant had exercised undue influence upon her husband must be sustained, if at all, upon and by circumstantial evidence.

It is plain that here was a man, weakened by age and disease, marrying under very peculiar circumstances. The usual objects of matrimony could not have been the ruling motive in prompting this marriage. He must have known, if he had any judgment left, that this marriage could not have been of any advantage to him when so near death. On the other hand, it is hard to grasp any motive of the appellant, in middle age, to become the wife of an old, decrepit man sorely afflicted with the infirmities of age and disease and who was at the threshold of the grave, unless we conclude that she was moved by the monetary element involved, which is a permissible inference. The fact that he bought her two automobiles, is a circumstance to be considered. She got the marriage license, but there was a delay of three months before it was used shortly prior to his death. She got her minister. She was the moving spirit. Such an unusual discount to get money on a good mortgage is strong evidence of some unusual motive. This is a very powerful and significant circumstance. The rapidity with which these incidents occurred, all of which were directed by appellant, not only shows that she worked fast but necessarily characterizes her conduct, aims and ambitions. She may have had ample reason in her mind to justify her activity, but that does not change the effect of efforts upon the mind of the decedent.

To constitute undue influence, it is not necessarily required that there should exist moral turpitude or even an improper motive. Her responsibility is not shown by direct evidence, but the record is sufficient to justify the court in concluding that she was the guiding and controlling influence; her personality was observable to the trial court, and, perchance by virtue of the prestige of her position in the Pett home, she was enabled in her own way to destroy the free agency of decedent. As to whether or not such was the case the learned trial court was in a position to determine. Undue influence exists wherever through weakness, dependence and implicit reliance by one on the good faith of another, the latter

obtains an ascendency which prevents the former from exercising his free will. It may be by importunity or by a silent, resistless power. Exact definition is impossible. It is ordinarily of an insidious nature, and, when it exists, it is usually between those in close confidential relation. 3 Dunnell, Minn. Dig. § 9949. It is efficient when it destroys free agency. Opportunity, motive, disposition, improvident discount, relation of parties, age of parties, conduct of parties, are all circumstances to be considered. Undue influence is frequently established by circumstantial evidence. In fact, in many cases, that is the only kind of evidence available. Shaughnessy v. Shaughnessy, 135 Minn. 262, 170 N. W. 769; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891; Graham v. Burch, 44 Minn. 33, 46 N. W. 148. The evidence is such that the court could have found either way. It was legally sufficient. The usual advantages which the trial court has, as a trier of fact, and the usual rule applicable in such cases, in this court, require us to hold that the order of the trial court should be affirmed.

It is so ordered.

QUINN and STONE, JJ. (dissenting.)
We do not agree that there is sufficient proof in this case to support a finding of undue influence.