# DONALD J. PROULX AND ANOTHER v. HIRSCH BROS., INC., AND OTHERS.

155 N. W. (2d) 907.

January 19, 1968—No. 40,758.

*Harold Siegel,* for appellants.

*Leonard E. Oslund* and *T. H. Wangensteen,* for respondents Samuel Thorpe III and Charles Gesme.

*Larkin, Hoffman, Daly, Lindgren & Danielson* and *James P. Larkin,* for respondent First Avenue Court.

*Hall, Smith, Hedlund, Juster, Forsberg & Feikema,* for respondents Hirsch.

NELSON, JUSTICE

Appeal from an order of the District Court of Hennepin County denying plaintiffs' motion for amended findings or a new trial. One of the defendants, First Avenue Court, also sought review of denial of its similar motion. The action is one to rescind a contract whereby plaintiffs assigned their vendee's interest in a contract for deed. The other defendants are James Hirsch; James F. Hirsch Construction Company, Inc., hereinafter called Construction Company; Samuel Thorpe III; and Charles Gesme.

In 1963 Hirsch Bros., Inc., constructed a building in Minneapolis at 2816 Pillsbury Avenue South. In a trade transaction plaintiffs herein, Donald J. Proulx and Emily J. Proulx, husband and wife, acquired a vendee's interest in the property under a contract for deed dated November 14, 1963. Capitol Factors, Inc., is the present fee owner of the property. On December 29, 1965, plaintiffs conveyed their vendee's interest in the property to Construction Company, a corporation owned solely by defendant James F. Hirsch. In consideration thereof said company agreed to construct a new building for plaintiffs at 324 West Old Shakopee Road, Bloomington, and to pay plaintiffs $500 per month during the period when the new building would be under construction. These parties had made a similar agreement on at least one prior occasion. Following the conveyance by plaintiffs an agent of Construction Company took possession of the Pillsbury Avenue property and began collecting rents and carrying out other management duties.

James F. Hirsch undertook to perform his duty of constructing the building in Bloomington for plaintiffs as follows: He appeared before the Bloomington City Council and Planning Commission to obtain approval of the building. He commissioned an architect to draw up plans for it, and these plans were in fact completed pursuant to Hirsch's agreement with plaintiffs. He commissioned soil tests to be made on the land and in February 1966 Hirsch secured a first mortgage commitment of $350,000 for the project. He made payments on the Bloomington land totaling $3,500, and in accordance with the agreement took over the duty of making payments on the contract for deed in which plaintiffs were vendees. Hirsch also made a payment of $1,000 to plaintiffs pur-

suant to their agreement that he would pay them $500 per month during the period of construction of the building in Bloomington. Because of financial difficulties, however, Construction Company was unable to complete the construction of the building.

Defendant James F. Hirsch was the only shareholder in another corporation, Hershey's Investments No. One, Inc., hereafter called Hershey, which was set up for the purpose of functioning as the general partner of defendant First Avenue Court, a partnership composed of one corporate general partner and 17 or 18 limited partners.

In the fall of 1965 James F. Hirsch proposed to the First Avenue Court partners that that partnership consider the possibility of investing some of its cash in contracts for deed, and by December 1965 this general proposal had begun to focus on one particular piece of property, namely, 2816 Pillsbury Avenue South. Hirsch advised First Avenue Court that the rate of return on a contract for deed on this property would be 12 to 15 percent of the investment made. Hirsch testified that early in January 1966 it was agreed that First Avenue Court would purchase an interest in that property. First Avenue Court paid Construction Company $10,500 in January and February 1966, before the transfer was made.

In the early months of 1966 certain other transactions also took place: On January 17, 1966, Construction Company entered into a contract for deed to sell its vendee's interest in the Pillsbury Avenue property to Hershey, the general partner of First Avenue Court. First Avenue Court had a general meeting of the whole partnership in late January or early February 1966, at which time it became understood that a purchase of an interest in the Pillsbury Avenue property had been accomplished. The contract of assignment had been drawn at that time but was redrawn and finally formalized on March 16, 1966, by an assignment from Construction Company to First Avenue Court of the vendor's interest in the contract for deed between Construction Company and Hershey.

In February 1966, Construction Company entered into an earnest money agreement to transfer the vendee's interest in the Pillsbury Avenue property to defendants Samuel Thorpe III and Charles Gesme. This transfer was to be closed on March 10, 1966. The agreement provided

for a $5,000 downpayment from Thorpe and Gesme to Construction Company, and $1,000 was transferred on February 24, 1966, the remainder being placed in escrow with Thorpe and Gesme's attorney, Leonard E. Oslund.

On March 10, 1966, Thorpe and Gesme met with Hirsch's attorney, Leonard Juster, who told them that Construction Company would not be able to complete the agreement to transfer its interest in the Pillsbury Avenue property to them. Mr. Oslund thereafter remitted to Thorpe and Gesme the $4,000 portion of the downpayment which he had been holding in escrow.

On March 30, 1966, plaintiffs brought this action against defendants, seeking to set aside the agreement of December 29, 1965, wherein they transferred the Pillsbury Avenue property to Construction Company. Plaintiffs alleged that they were fraudulently induced to enter into such transaction by defendant James F. Hirsch.

Defendant First Avenue Court interposed a separate answer to plaintiffs' complaint, alleging failure on plaintiffs' part to state a claim upon which relief could be granted; alleging that its interest in the property was obtained for a good and valuable consideration; and asking that it be adjudged the owner of "a valid and subsisting interest in the premises."

Defendants Thorpe and Gesme also entered a separate answer, alleging that they stood ready, willing, and able to perform their part of their agreement with Construction Company for the transfer of the Pillsbury Avenue property and seeking a determination that their interest in that property was superior to any interest of the other defendants named in this action.

At the conclusion of the trial, the court held that (1) defendant Construction Company is the equitable owner of the Pillsbury Avenue property; (2) that defendants Thorpe and Gesme were bona fide purchasers of said property without notice; (3) that the purchase agreement between Construction Company and Thorpe and Gesme was and is a valid agreement and that the interest of defendants Thorpe and Gesme in the property is prior and superior to the rights of any of the other parties to this action, except the right of Construction Company to receive the remaining purchase money stipulated in said agreement; (4)

that defendants Thorpe and Gesme are entitled to receive an accounting and payment for the net rents received by the court-appointed receiver from the property for the period from and after March 1, 1966; and (5) that the assignment to First Avenue Court of the vendor's interest in the contract for deed between Construction Company and Hershey constitutes an equitable mortgage in the amount of $10,500 on the interest of defendant Construction Company, subordinate to the interest of Thorpe and Gesme.

The issues appear to be (1) whether plaintiffs proved fraud on the part of Construction Company in the inducement to sell the Pillsbury Avenue property; (2) whether a contract for the sale of property may be rescinded and the property returned where it has subsequently been purchased by a bona fide purchaser for value without notice; and (3) whether defendant First Avenue Court is entitled to more than an equitable mortgage in the amount of $10,500 on the interest of defendant Construction Company.

Plaintiffs' complaint and the pretrial order clearly show that the only basis for plaintiffs' claim for the return of the Pillsbury Avenue property is that they had been fraudulently induced by Construction Company to convey the property. However, plaintiffs did not introduce any evidence of fraud on the part of James F. Hirsch in his promise to the plaintiffs that in consideration of their transferring to him the property at 2816 Pillsbury Avenue South he would, inter alia, construct a new building for plaintiffs at the Bloomington site. Since there was no evidence of misrepresentation introduced, the trial court did not err in refusing to restore the property to plaintiffs. It is the established law in Minnesota that an action predicated on fraud can be successfully concluded only if it is shown that the putative defrauder made a misrepresentation of a material fact, knowing it to be false, or as of his own knowledge without knowing whether it was true or false, with intent to induce the person to whom it was made to act in reliance upon it, or under such circumstances that such person was justified in acting in reliance upon it, and that such person was thereby deceived and induced to act in reliance upon it to his pecuniary damage. See, Wann v. Northwestern Trust Co. 120 Minn. 493, 139 N. W. 1061; Spiess v. Brandt,

230 Minn. 246, 41 N. W. (2d) 561, 27 A. L. R. (2d) 1; Swanson v. Domning, 251 Minn. 110, 86 N. W. (2d) 716.

Plaintiffs cite Magnuson v. Bouck, 178 Minn. 238, 226 N. W. 702, in support of their claim of fraud and misrepresentation. In that case an innocent misrepresentation was said to be a valid basis for the remedy of rescission. In this case, however, plaintiffs failed to prove any misrepresentation, either fraudulent or innocent. A representation of intention as to future acts or events which has not been falsely made with the purpose to deceive is not a sufficient ground upon which to predicate a charge of fraud, nor is it a sufficient basis for establishing the right to rescission of a contract induced by the representation, even though the act or event did not occur as represented. See, Bigelow v. Barnes, 121 Minn. 148, 140 N. W. 1032, 45 L. R. A. (N. S.) 203; Bakke v. Keller, 220 Minn. 383, 19 N. W. (2d) 803.

There was substantial uncontradicted testimony that Hirsch fully intended to perform his duty of erecting the building in Bloomington for plaintiffs and made numerous and continued efforts to do so. These actions are evidence of lack of fraud or misrepresentation on his part as to his intention to complete his undertaking pursuant to the provisions of Construction Company's contract with plaintiffs.

■ Even if there had been evidence of fraud in this situation, which there was not, plaintiffs would not be entitled to the remedy of rescission because they accepted and retained $1,000 paid by Hirsch pursuant to the purchase agreement. One who may avoid a contract for fraud ratifies it by accepting and retaining the benefits thereof. See, Maki v. St. Luke's Hospital Assn. 122 Minn. 444, 142 N. W. 705; Bakke v. Keller, *supra*; Crooks v. Nippolt, 44 Minn. 239, 46 N. W. 349; Wagner v. Magee, 130 Minn. 162, 153 N. W. 313.

■ Plaintiffs in their brief argue that they are entitled to rescission because of breach of contract or failure of consideration, citing Karbach v. Grant, 131 Minn. 269, 154 N. W. 1071, in support of this claim. A perusal of the record clearly establishes that neither breach of contract nor failure of consideration was an issue enumerated in the pretrial order or litigated at the trial. Under the circumstances, whether

either of these grounds would support rescission is not now before this court.

■ Rescission and restoration will not be granted to the prejudice of bona fide purchasers acquiring rights subsequent to the execution of the instrument sought to be canceled. See, Graham v. Burch, 44 Minn. 33, 46 N. W. 148; Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113; Whitcomb v. Hardy, 73 Minn. 285, 76 N. W. 29; Bauer v. O'Brien Land Co. 144 Minn. 130, 174 N. W. 736; Henderson v. Crosby, 156 Minn. 323, 194 N. W. 641; Lay v. Shaubhut, 6 Minn. 182 (273); Woolson v. Kelley, 73 Minn. 513, 76 N. W. 258; Pott v. Hanson, 109 Minn. 416, 124 N. W. 17. Defendants Thorpe and Gesme were correctly found to be bona fide purchasers. Bergstrom v. Johnson, 111 Minn. 247, 126 N. W. 899.

■ We think it clear that under the evidence herein both plaintiffs and the other defendants are estopped from asserting any claims in opposition to rights acquired by defendants Thorpe and Gesme through their good-faith purchase of this property. See, St. Denis v. Mullen, 157 Minn. 266, 196 N. W. 258; Watts v. Lundeen, 165 Minn. 300, 206 N. W. 444. Plaintiffs are estopped by reason of the fact that they gave a quitclaim deed and assignment of their interest, without qualification, to Construction Company and simultaneously therewith surrendered and delivered possession to it. Hershey is estopped from asserting any claim based on the transfer to it on January 17, 1966, from Construction Company by reason of the fact that no consideration was paid and, according to Hirsch's testimony, it was intended to be merely a "within corporation transaction." Moreover, James F. Hirsch was the sole owner of both corporations and executed the contract for deed on behalf of both corporations. As to the purported transfer from Construction Company to First Avenue Court, although First Avenue Court argues that the evidence established that it was purchasing the vendor's interest in the contract for deed between Construction Company and Hershey, and whatever equity Construction Company had in the property, there was evidence to support the finding that the transfer was a security transaction rather than a sale. Construction Company at all times remained in possession of the premises.

■ The trial court, having determined that the agreement between Construction Company and First Avenue Court was a loan agreement and not a purchase agreement, concluded that First Avenue Court had an equitable mortgage on the interest of Construction Company. See, Meighen v. King, 31 Minn. 115, 16 N. W. 702; Hecht v. Anthony, 204 Minn. 432, 283 N. W. 753; Beberman v. Frisch, 242 Minn. 12, 64 N. W. (2d) 132. The test of whether an equitable mortgage is created is whether the parties to the transaction intended it to be essentially a security transaction. In applying the test, it is necessary to consider all relevant facts surrounding the transaction and the situation of the parties, as well as written memorials of the transaction. King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Hewitt v. Baker, 222 Minn. 292, 24 N. W. (2d) 47. In such transactions it is often difficult to know the exact intention of the parties. Here there is some evidence indicating that First Avenue Court was making a purchase as an investment, but there is sufficient evidence to support the trial court's finding that the transfer was actually meant to give First Avenue Court security for advances made to Construction Company.

Since the trial court in this case was sitting as a court of equity and assumed the power of arranging the rights as between parties in a fair manner, after finding that the transfer was intended to secure a loan from First Avenue Court to Construction Company, it properly held that First Avenue Court had an equitable mortgage, for the amount of its loan, on the interest of Construction Company in the property, subordinate and inferior to the interests of defendants Thorpe and Gesme therein.

Affirmed.