# UNITED STATES INSTALLMENT REALTY COMPANY v. DeLANCY COMPANY.[1]

April 28, 1922.

No. 22,761.

**Injunction against enforcement of judgment — denial of application error.**

1. After contracts for the exchange of lands had been partly performed, the De Lancy Company brought suit for damages for false representations and recovered a verdict of $10,036 against the Realty Company. The Realty Company then brought suit on a promissory note for $21,236.40 executed by the De Lancy Company for the unpaid purchase price on one of the contracts, and, alleging that the De Lancy Company was insolvent with no property except the verdict, asked that the verdict and judgment entered thereon be offset against the amount which should be recovered on the note, and applied for an injunction restraining the De Lancy Company from enforcing its judgment during the pendency of the suit on the note. The De Lancy Company claimed that the contracts had been rescinded so far as they remained executory, and also that the Realty Company could not maintain an action on the note, even if there had been no rescission, but must seek its remedy in an action for damages or for specific performance. The injunction was refused on the ground that the Realty Company is not entitled to recover. It is *held* that the conclusion that the Realty Company is not entitled to recover cannot be sustained on the record presented, and that an injunction should issue.

**Rescission of contract for fraud—when partial rescission is possible.**

2. Where a party who has been induced to enter into a contract by fraud discovers the fraud while the contract remains wholly executory, he must repudiate the contract or he waives the fraud. If he has performed the contract, in whole or in part, before discovering the fraud, he may affirm the contract and sue for damages, or rescind the contract and recover what he parted with on returning what he received. He cannot affirm in part and rescind in part, unless the contract involves separate transactions which do not constitute the consideration for each other.

[1]Reported in 188 N. W. 212.

**Recovery of damages equivalent to affirmance.**

    3. The De Lancy Company, by suing for and recovering damages, affirmed the contracts as entireties, unless it shall show that the action was voluntarily tried on the theory that the contracts were rescinded so far as they remained executory.

**Remedies of vendor for breach of vendee.**

    4. Where the vendee in an executory contract fails to pay the purchase price, the vendor may bring an action for damages, or to enforce a lien against the land, or for specific performance, or for the purchase price if he be entitled to receive it before delivering the deed. Under the contract in controversy he may maintain an action on the note given for the deferred instalment of the purchase price.

Action in the district court for Hennepin county upon defendant's note to recover so much of $27,607.32 as should exceed the amount necessary to pay defendant its verdict of $10,036, recovered against plaintiff in another action, and to enjoin defendant from assigning or encumbering said verdict or any judgment thereon, or from issuing execution on such judgment pendente lite, and for such other relief as might be just and equitable. From an order denying its motion for a temporary injunction, Leary, J., plaintiff appealed. Reversed.

    *John Lind, George T. Simpson* and *John F. Dahl,* for appellant.
    *H. E. Fryberger, G. A. Petri* and *Paul J. Thompson,* for respondent.

TAYLOR, C.

The plaintiff in this action was the defendant in a former action involved in these proceedings, and the defendant in this action was the plaintiff in that action. To avoid confusion we shall refer to them as the Realty Company and the De Lancy Company, respectively.

The De Lancy Company owned two apartment buildings in the city of Minneapolis, the first subject to encumbrances of $32,000, the second subject to encumbrances of $22,000. The Realty Company owned a large quantity of land in the state of Texas subject to encumbrances of $20 per acre. On May 11, 1916, the two companies entered into a contract in which the De Lancy Company agreed to

convey to the Realty Company the first apartment building subject to the encumbrances thereon, and the Realty Company agreed to pay the De Lancy Company $23,000 in cash and $12,000 in its bonds and to enter into a contract, in the form used by the Realty Company, to convey to the De Lancy Company parcels numbered 1 to 81 inclusive, aggregating 1,856 acres, of its Texas land, free and clear from all encumbrance, on being paid, on or before May 11, 1921, the sum of $37,120, being the amount of the encumbrance thereon.

On May 20, 1916, under and pursuant to the above contract, the De Lancy Company conveyed the apartment building to the Realty Company, and the Realty Company made the stipulated payments, and both companies executed a supplementary contract, by which the De Lancy Company agreed to pay $120,120 for the 1,856 acres of Texas land, of which sum $83,000 was paid by the conveyance of the apartment building and the balance of $37,120, being the aggregate amount of the existing encumbrances on the land, was to be paid on or before May 20, 1921, and the Realty Company agreed to convey the land to the De Lancy Company free from all encumbrance (except a half interest in the mineral rights) on the terms and conditions specified in this contract.

On June 1, 1916, the two companies entered into another contract, in which the De Lancy Company agreed to convey to the Realty Company its second apartment building, subject to the encumbrances thereon, and the Realty Company agreed to pay the De Lancy Company $5,000 in cash and $20,500 in certain specified obligations and to enter into a contract, in the form used by the Realty Company, to convey to the De Lancy Company parcels numbered 82 to 129 inclusive, aggregating 1,061 81/100 acres, of its Texas land free and clear from all encumbrance, on being paid, on or before June 1, 1921, the sum of $21,236.40, being the amount of the encumbrances thereon, for which sum the De Lancy Company agreed to give its promissory note. On June 19, 1916, under and pursuant to this contract, the De Lancy Company conveyed to the Realty Company the second apartment building subject to the encumbrances thereon, and the Realty Company made the stipulated payments, and both companies executed a supplementary contract by which the

De Lancy Company agreed to pay $69,018.30 for the 1,061.82 acres of Texas land, of which sum $47,781.90 was paid by the conveyance of the second apartment building, and the balance of $21,236.40 was to be paid according to the terms of the promissory note therefor executed by the De Lancy Company and payable on or before June 1, 1921, and the Realty Company agreed to convey the land to the De Lancy Company free from all encumbrance (except a half interest in the mineral rights) "upon the terms and conditions [therein] set forth." The contracts also contained a provision requiring the Realty Company to convey any one or more of the parcels of land at any time on being paid $20 per acre, the amount of the existing encumbrance thereon.

About July 1, 1919, the De Lancy Company brought an action against the Realty Company for damages for fraudulently misrepresenting the character, quality, condition and value of the Texas land and the value of the bonds and obligations of the Realty Company issued to the De Lancy Company as a part of the consideration for the conveyance of the apartment buildings. It set forth the transactions relating to the first apartment building as a first cause of action, and the transactions relating to the second apartment building as a second cause of action. The trial began May 18, 1921, and resulted in a verdict in favor of the De Lancy Company for the sum of $10,136, on June 3, 1921. On the return of the verdict the court entered an order staying proceedings thereon for a period of 60 days.

The note of the De Lancy Company for $21,236.40 having become due, the Realty Company, on June 19, 1921, sued thereon and in its complaint set forth the rendition of the verdict for $10,036 in favor of the De Lancy Company in the other action, and alleged that the De Lancy Company had no property or assets except that verdict and was wholly insolvent, and asked that the amount of the verdict or of any judgment entered thereon be offset against and be paid and satisfied out of the amount recovered in the suit on the note, and further asked that the De Lancy Company be enjoined from transferring the verdict or enforcing collection of it during the pendency of the action on the note.

Thereafter and before the stay in the other action had expired, the Realty Company made an application for a temporary injunction restraining the De Lancy Company from transferring or encumbering the verdict or any judgment that might be entered thereon until the termination of the action on the note. The trial court denied this application and the Realty Company appeals.

Whether the Realty Company is entitled to the temporary injunction for which it applied is the question presented. From the memorandum of the trial court which was made a part of its order, it appears that the principal, and perhaps the only, reason for refusing to grant the injunction, was the fact that in the opinion of the court the Realty Company is not entitled to recover on the note.

In the present action the De Lancy Company took the position that the recovery in the former action was only for the damages sustained in consequence of the performance of those provisions of the contracts which had been actually performed; that it had been determined in the former action that the De Lancy Company had the right to repudiate and rescind the contracts insofar as such contracts remained executory; that it had repudiated and rescinded all unperformed provisions of the contracts, and that the Realty Company is barred from enforcing payment of the note on which it bases the present action. The trial court seems to have taken this view of the situation.

The remedies open to a party who has been induced to enter into a contract by fraudulent misrepresentation are well settled and have frequently been pointed out. If he discovers the fraud while the contract remains wholly executory, his only remedy is to repudiate and rescind the contract; if he performs or accepts performance, in whole or in part, he thereby affirms the contract and waives the fraud. Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838; O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102; The Encyclopedia Press, Inc. v. Harris, 140 Minn. 145, 167 N. W. 363; Bartleson v. Vanderhoff, 96 Minn. 184, 104 N. W. 820; Thompson v. Libby, 36 Minn. 287, 31 N. W. 52. If he has performed the contract, in whole or in part, before discovering the fraud, he may affirm the contract and sue for damages, or he may rescind the contract and recover what he parted

with on returning what he received, but any act of ratification after knowledge of facts authorizing a rescission operates as an affirmance and waives the right to rescind. Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Crooks v. Nippolt, 44 Minn. 239, 46 N. W. 349; Mlnazek v. Libera, 83 Minn. 288, 86 N. W. 100; Neibuhr v. Gage, 99 Minn. 149, 108 N. W. 884, 109 N. W. 1; Arcade Inv. Co. v. Hawley, 139 Minn. 27, 165 N. W. 477; The Encyclopedia Press, Inc. v. Harris, 140 Minn. 145, 163 N. W. 363; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954. He cannot affirm a part of the contract and also rescind a part of it. If he affirms it, either by suing for damages or in any other manner, he affirms it as an entirety and becomes obligated to perform any unperformed undertakings on his part. Wagner v. Magee, 130 Minn. 162, 153 N. W. 313; The Encyclopedia Press, Inc. v. Harris, 140 Minn. 145, 163 N. W. 363; Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212; Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737; Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486. But, where the transaction involves two separate contracts and the one is not the consideration for the other, he may affirm one and rescind the other. Przyblyski v. Pellowski, 141 Minn. 193, 169 N. W. 707; Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 636.

This last rule has been extended far enough to hold that, where a lessee under a ground lease for a long term of years has been induced by fraud to agree to pay an annual rental in excess of the annual value of the use of the property, the contract is divisible and is to be treated as an executed contract so far as it had been performed before the fraud was discovered, and as a separate executory contract so far as it was to be performed after such discovery. Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838; O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102. The case last cited points out the distinction between such a contract for the sale or exchange of real estate.

On discovering the fraud the De Lancy Company had the right to sue for damages, or to sue in equity for a rescission of the contracts, or to rescind by its own act and return, or offer to return, what it had received and sue for what it had parted with. It elect-

ed to sue at law for damages. In its complaint it made no claim that it had rescinded any of the contracts or any part of them, neither did it ask the court to rescind any of them or any part of them. So far as the pleadings disclose, the action was the ordinary action in deceit and nothing more, and was based mainly on alleged false representations concerning the character, condition and value of the Texas land. The proceedings at the trial of that case are not disclosed by the record in the present case, except that the charge to the jury has been included in the present return and both parties treat it as a proper part of the record. However, this charge contains nothing to indicate that the case was tried on any other or different theory than that set forth in the complaint.

At the trial of the present action the De Lancy Company may, perhaps, be able to show that the former action was in fact voluntarily tried on the theory that the contracts were divisible and had been rescinded insofar as they remained executory, and that the recovery was limited to the damages sustained in consequence of performing those portions of the contracts which had been actually performed, but the present record discloses no basis for such an assumption. It shows that the De Lancy Company brought suit and recovered damages on the theory that the contracts were entireties, and thereby affirmed them in toto and imposed upon itself the duty to perform any unperformed part of its own undertakings. The order of the trial court cannot be sustained on the assumption that the executory portions of the contracts had been rescinded.

The De Lancy Company also contends that the Realty Company cannot maintain an action on the note, but must seek its remedy either in an action for specific performance or for damages for breach of the contract, and is not entitled to a temporary injunction or any other relief in the present action.

The rights and remedies of a vendor arising from the failure of the vendee to pay the purchase price received extended consideration in Noyes v. Brown, 142 Minn. 211, 171 N. W. 803, and the varying authorities were cited and reviewed. The remedies available to the vendor may be thus summarized: He may bring an action for damages for breach of the contract. He may bring an action to enforce

a lien against the property for the unpaid purchase price. He may bring an action for specific performance and recover a money judgment for the purchase price on performing the part of the contract to be performed by him. If he is entitled to receive the purchase price before he can be required to convey, he may bring an action at law therefor, but collection of the judgment will be stayed until he deposits a proper deed for delivery to the vendee on payment of the judgment.

The purpose of the courts in requiring the vendor to bring an equitable action for specific performance instead of an action at law for the purchase price, where he elects to collect the purchase price, is to make sure that the vendee will not be compelled to pay for the land without getting it. And, as pointed out in the Noyes case, if this purpose be accomplished, it makes little practical difference whether the action is what is termed a suit in equity or an action at law, especially in this jurisdiction where the distinctions between suits in equity and actions at law and the forms peculiar thereto have been abolished. In the Noyes case it was held that the vendor could maintain an action at law on the contract because the vendee was not entitled to a conveyance until he had made payment and demanded a deed, but that execution on the judgment would be stayed until plaintiff deposited the deed in court for delivery on payment of the judgment. In the present case the contract states:

"It is specifically agreed and is an essential part of this contract, that the said party of the second part shall not by virtue of the above payments obtain any right or title to the above described land, or any part thereof, until said payments and other obligations are fully complied with, or a deed to same is tendered by the said party of the first part."

While this provision cannot be given the effect of withholding from the vendee an equitable interest in the land in view of the other provisions of the contract, yet the stipulation that he shall obtain no right or title to the land until he has made payment in full necessarily implies that the title is not to be conveyed to him

until after he has made such payment. That such was the intention is further indicated by the giving of a promissory note for the deferred instalment. That one party stipulated for and the other executed a negotiable instrument for the purchase price tends to show an intention to create an independent, as distinguished from a dependent, obligation. We think that the present case falls within the rule applied in the Noyes case and that an action on the note will lie. The rights of the De Lancy Company can be amply protected by staying the enforcement of any judgment obtained until a proper conveyance of the title to the land is assured to it.

As a condition to obtaining the temporary injunction sought, the Realty Company offers to give a bond to the effect that, if it shall fail to establish the claim asserted in the present action in a sufficient amount to offset and satisfy the judgment in the former action, it will pay such former judgment or any unsatisfied part thereof in full. On the filing of a good and sufficient bond, approved by the trial court, securing to the De Lancy Company the payment of the judgment in the former action or of such part thereof as shall not be satisfied by offsetting against it the recovery, if any, in the present action, the trial court will issue an injunction restraining the De Lancy Company from transferring, encumbering or enforcing such former judgment during the pendency of the present action.