**ALBERT LEA FOUNDRY CO. et al. v. IOWA SAV. BANK OF MARSHALL-TOWN, IOWA.***

Circuit Court of Appeals, Eighth Circuit.
August 10, 1927.

No. 7735.

**1. Pleading ⬤═146—Answer held not to include an affirmative counterclaim for damages from fraud.**

The answer in an action at law on notes *held* to allege fraud only as a defense and ground for rescission of the contract and cancellation of the notes, and not as an affirmative counterclaim for damages.

*Rehearing denied October 31, 1927.

**2. Election of remedies ⬤═7(2)—Notice of rescission of contract precludes subsequent claim for damages for its breach.**

Notice by defendant that it rescinded a contract for fraud was an election which precluded it from afterward claiming damages for its breach.

**3. Corporations ⬤═457—Corporation purchaser, failing to act on its notice of rescission, but retaining and using property, held precluded from setting up rescission as defense to action for price.**

Where defendant served notice of its rescission of a contract by which it bought the property and assets of another corporation on the ground of fraud and misrepresentation, and offered to return the property, but in fact retained and used it, sold some of it, and collected accounts due the seller, and retained the proceeds, it lost the right to set up the rescission as a defense to an action on the notes given for the purchase price as matter of law, and the court properly directed a verdict for plaintiff.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action at law by the Iowa Savings Bank of Marshalltown, Iowa, against the Albert Lea Foundry Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Joseph N. Moonan, of Waseca, Minn. (H. H. Dunn, of Albert Lea, Minn., Ray Moonan, of Waseca, Minn., and Fowler, Carlson, Furber & Johnson, of Minneapolis, Minn., on the brief), for plaintiffs in error.

J. F. D. Meighen, of Albert Lea, Minn. (Meighen, Knudson & Sturtz, of Albert Lea, Minn., and C. H. E. Boardman, of Marshalltown, Iowa, on the brief), for defendant in error.

Before KENYON, Circuit Judge, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. Defendant in error was plaintiff in the trial court, and for convenience we will so designate it in this opinion. Plaintiffs in error will be designated as defendants.

Plaintiff brought action against defendants in the United States District Court on two promissory notes executed June 1, 1921, in the sum of $5,000 and $10,000, respectively, by the Albert Lea Foundry Company, by R. H. McDowell, president, payable to Imperial Furnace Company, R. H. McDowell, trustee, or order, representing the purchase price of certain personal property sold by the furnace company to the foundry company. One note was by the furnace company to the foundry company. One note was due

June 1, 1924, the other June 1, 1925. Payment of said notes was guaranteed by defendants A. C. Erickson, Henry J. Harm, and Oscar Subby. Plaintiff at the time of commencement of the action held said notes for the benefit of the creditors of the Imperial Furnace Company of Marshalltown, Iowa.

Defendants Erickson, Harm, and Subby were heavy creditors of the Albert Lea Tractor Company. A written contract was entered into between them and R. H. McDowell, which resulted in defendant Albert Lea Foundry Company (hereinafter designated the foundry company) being organized as successor to the tractor company. This contract was taken over by that company when organized, McDowell accepting stock in the foundry company for the contract. He was to receive a salary of $500 a month for his services in managing the foundry company and confine his work to that corporation and the Central Foundry Company at Marshalltown, Iowa, with which he was connected. The Imperial Furnace Company of Marshalltown (hereafter designated the furnace company) being financially involved, a plan of liquidation was evolved, and McDowell was made trustee for the creditors, and placed in charge of the property, with authority to secure from it what he could for the benefit of the creditors. For his work he was to receive 15 per cent. of any amounts collected on the creditors' claims. Among the creditors was the Central Foundry Company of Marshalltown, Iowa, in which company McDowell was a substantial stockholder. At the time of the execution of the two notes involved in this suit, McDowell was president of the foundry company, and trustee for the creditors of the furnace company. Erickson, Subby, and Harm were all directors in the Albert Lea Tractor Company, and became directors, together with Charles Westberg, R. H. McDowell, John T. Basham, and W. B. Wood (the last three named being from Marshalltown), in the new foundry company; McDowell owning nearly all the shares of stock of this company. McDowell repeatedly attempted to have the directors arrange to buy the business and personal property of the furnace company at Marshalltown and make them part of the assets of the foundry company. In due course arrangements were made, authorizing McDowell, for the foundry company, to buy the business of the furnace company for $15,000; Erickson, Subby, and Harm to guarantee the payment thereof. This purchase was made, and on June 1, 1921, the foundry company executed the notes in suit. The notes apparently were made to the Im-

perial Furnace Company, trustee, and the name R. H. McDowell was inserted, presumably by him, without the knowledge of Mr. Erickson, who wrote the notes. This was done prior to plaintiff's acquisition thereof. A bill of sale was made and delivered June 1, 1921, by R. H. McDowell, as trustee, to the foundry company, covering all merchandise, good will, patterns, bills, and accounts, and all property of the furnace company. The inventory of this stock and machinery, taken from the books of the furnace company, show a value of $17,353.76. The property of the furnace company was delivered to the foundry company at Marshalltown, Iowa, and shipped by it to Albert Lea, Minnesota. An entry was made June 30, 1921, on the daily journal of the foundry company by its bookkeeper, Mr. Green, as follows:

"Debit, $15,000.00; bills payable, credit, $15,000. * * *

"Notes given June 1st, 1921, to R. H. McDowell, trustee for Imperial Furnace Co. # 4—4 years @ 5% $10,000. #5—3 years @ 5%, $5,000.00."

In the same book for the same day, page 166, ledger entry, appears the following:

"Imperial Furnace Co. a/c, debit $15,000. Assets and equipment (bills payable) $15,000.00. * * *

"Gave two notes June 1st, 1921, to R. H. Mc———, trustee for creditors of Imperial Furnace Co. One for $10,000.00 4 yrs. @ %—one $5,000.00 for 3 yrs. @ 5%."

The notes were delivered by McDowell to the plaintiff, to be collected for the benefit of the creditors of the Imperial Furnace Company. This plaintiff gave a receipt therefor as follows:

"This is to acknowledge receipt from R. H. McDowell, trustee of the Imperial Furnace Company of Marshalltown, Iowa, of the following notes, which are to be held for collection, and when collected both principal and interest are to be turned over to R. H. McDowell, trustee, or to his successor, for the purpose of distribution as provided in the trust agreement among the creditors of said Imperial Furnace Company, viz.:

"Note of five thousand dollars due three years after its date and note of ten thousand dollars due four years after its date, both notes bearing [vice] per cent. interest bearing date June 1st, 1921, and given by the Albert Lea Foundry Company to R. H. McDowell, trustee, and indorsed by A. C. Erickson, Henry Harm, and Oscar Subby.

"Done at Marshalltown, Iowa, this ——— day of June, 1921.

"Iowa Savings Bank,
"W. H. Arney, Pres."

At the bottom of the receipt is this:

"In division McDowell gets 10% and Boardman gets 10%, by agreement between McDowell and Boardman and agreement with creditors. 1917—Creditors were to pay McDowell 15%—Boardman 5%."

The Albert Lea Foundry Company entered into the business of manufacturing and selling Imperial furnaces, sold some of the furnaces purchased from the furnace company, and collected some of its accounts: In May, 1922, McDowell sold his stock, and from that time on had no connection with the foundry company. Mr. Trow became its president. June 30, 1922, defendants paid the interest on the two notes in suit to plaintiff. The second check for interest was for some reason held up and not paid. October 18, 1923, Mr. C. H. E. Boardman, an attorney of Marshalltown, representing creditors of the defunct furnace company, wrote the foundry company, explaining to it fully how the money collected on the notes was to be used, and stating that McDowell and he were each to have a commission of 10 per cent. on the moneys received by the creditors of the furnace company. This was the first intimation defendants had of any agreement for a commission to McDowell. November 20, 1923, defendant foundry company served a notice of rescission on Boardman and plaintiff as follows:

"To R. H. McDowell, Trustee, C. H. E. Boardman, and Iowa Savings Bank of Marshalltown, Iowa:

"You are hereby notified that the undersigned, Albert Lea Foundry Company, hereby rescinds that certain sale and transaction entered into between the undersigned and said R. H. McDowell, trustee, in the month of May, 1921, whereby said R. H. McDowell, as trustee, sold and delivered to the undersigned, Albert Lea Foundry Company, certain goods, wares, and merchandise, and received in payment therefor two certain promissory notes, one for $5,000.00 and one for $10,000.00; and the undersigned hereby tenders back to the said R. H. McDowell, trustee, all and singular, the said goods, wares, and merchandise, and stands ready and willing to deliver and turn the same over to the said R. H. McDowell, trustee; and the undersigned hereby demands that the said promissory notes and both of them be returned and delivered up to the undersigned, and that they have immediate possession thereof; and that said entire transaction be rescinded and set aside, and the parties restored to the same position they were in before said sale and transaction.

"The reasons for this rescission are that said sale and transaction were tainted with fraud, misrepresentation, and bad faith, and that the undersigned were deceived and defrauded thereby, and that the goods, wares and merchandise were not as represented and warranted.

"Dated this 20th day of November, 1923.

"Albert Lea Foundry Company.

"H. H. Dunn, Attorney for Albert Lea Foundry Company, Home Investment Building, Albert Lea, Minn."

This notice was not served on McDowell.

Upon the trial, at the close of defendants' evidence, the court instructed a verdict for plaintiff for the full amount of the notes, with interest. The court had some difficulty, apparently on account of the condition of the pleadings, in ascertaining the exact position taken by defendants, as appears from the following portion of the record:

"The Court: As I understand this action —I don't know as I have read the pleadings carefully—you are not basing it wholly on rescission; you are setting up a defense that you are damaged?

"Mr. Meighen: No; there is not anything of that sort.

"Mr. Moonan: If the court please, the answer sets forth the facts, and then asks for various types of relief, under the answer.

"The Court: What is your theory?

"Mr. Moonan: Under the law now, since Congress passed the act of 1916, where you can set up equitable defense in law actions, you can set up the facts as they exist—

"The Court: This is not an equitable case; this is a jury case.

"Mr. Moonan: In a law action, now, as we understand it, the law is exactly the same as in the state court.

"The Court: What is your defense? Is it equitable or legal?

"Mr. Moonan: We set forth the facts; there has been no occasion for election.

"The Court: I will have to treat it as a legal action.

"Mr. Moonan: We did not bring the action; we are defending.

"The Court: Look at your pleadings—

"Mr. Moonan: We have not been required to elect; we stated the facts.

"Mr. Meighen: There is no claim for damages.

"Mr. Dunn: We do ask to have the notes delivered up."

The court concluded, however, that the defense to the notes was based on rescission for fraud, and that the answer did not claim

damages for fraud. Defendants insist in this court that several defenses were stated in the answer, and that rescission of the agreement which resulted in giving the notes was not the only defense; that the answer should be construed as one wherein there was a counterclaim for damages for breach of warranty and for fraud, and also a defense against the 15 per cent. commission included for McDowell; that, if these defenses were inconsistent, it was the duty of the plaintiff to move for an election by the defendants as to which defense they relied on, and, not having done so, that plaintiff waived the matter.

[1] Did the court err in limiting the defense to the question of rescission? Was the plaintiff required to move an election of defenses? The answer of defendants, which is a joint one, is not clear. The claim of several defenses therein is based upon the prayer of the answer, which is as follows:

"Wherefore these defendants demand judgment that the promissory notes set forth in the complaint be delivered up and canceled, that the matters pleaded herein be held and adjudged a set-off and counterclaim to the cause of action set forth in the complaint, and these defendants recover their costs and disbursements herein, and that the plaintiff take nothing hereby."

It is to be noted there is no demand for money damages in the answer. There is no separate statement of any counterclaim or set-off. All the allegations refer to the matter of rescission. While fraud is alleged, it is as a basis for rescission of the transaction, and not damages. There was nothing in the answer to advise the court or plaintiff that defendants, in addition to claiming rescission for fraud, were asking as an additional defense to have damages for fraud. If the answer might be construed as alleging breach of warranty, that question, as we view the case, becomes unimportant, as there is no evidence of breach of warranty. The theory of the answer is found in this quotation therefrom: "And these defendants allege that said entire transaction, including the execution and delivery of said promissory notes, was corrupt, fraudulent, null, and void."

It is to be noted that the case was tried wholly upon the theory of rescission. When objection was made to certain evidence as immaterial, in view of the fact that no offer or tender back had been made of the material received, counsel for defendants stated:

"Mr. Dunn: If the court please, under the authorities, where property has been sold it does not defeat rescission, and can be accounted for."

When the question of the nature of the action was called to the attention of counsel for defendants by the court, and the court stated it would have to treat it as a legal action, and the suggestion having been made by counsel for plaintiff that there was no claim for damages, defendants' counsel said, "We do ask to have the notes delivered up." That relief would come through rescission, and not by damages. It was not suggested to the court that defendants were attempting to recover damages for fraud as a set-off to the notes, nor was there any attempt on the part of defendants to try the case on any such theory. We are satisfied the real defense pleaded and relied on was rescission. The mere suggestions of the prayer that the matter pleaded be held and adjudged a set-off and counterclaim to the cause of action are not sufficient to constitute affirmative defenses.

[2] Immediately after October 18, 1923, defendants knew of the commissions that McDowell was to receive from the creditors. Prior thereto they had known that McDowell was trustee for the creditors of the furnace company. That fact appeared on the records of the foundry company. Accountant Alexander had no difficulty in ascertaining it, as is shown by his letter to plaintiff. It was no secret. Certainly the corporation was charged with knowledge of facts which appeared on its corporation books. Directors Subby and Harm constituted the board of audit. They must be presumed to know what the books of the company contained. Porter v. Hallett & Carey Co., 40 S. D. 136, 166 N. W. 525; Browns Valley State Bank v. Porter (C. C. A.) 232 F. 434. With full knowledge, therefore, of all the facts, defendant foundry company elected on October 18, 1923, to rescind the sale and transaction, placing the rescission on the two grounds of fraud: (a) That the goods, wares, and merchandise were not as represented and warranted; (b) that the transaction was tainted with bad faith and misrepresentation. Defendant foundry company thereby made its choice as to remedies— made its choice as to the position defendants would take with reference to the transaction, and that was to repudiate it for the alleged fraud.

What was the legal situation thereby created? Black on Rescission and Cancellation (1916 Ed.) vol. 2, p. 1324, par. 563, states the rule as follows:

"*Election Once Made is Final.*—A person who has the right either to rescind a contract to which he is a party or to affirm it and seek compensation in other ways for any

injury he has suffered, and who has once made his election and announced it, must abide by his choice. He cannot be allowed to vacillate in his purpose, or, having chosen one remedy, to abandon it and seek the other."

In United Engine Co. v. Junis, 196 Iowa, 914, 195 N. W. 606, 607, the Supreme Court of Iowa, dealing with this proposition, states:

"The rule is well established that a buyer of a chattel that has been sold under a warranty, either express or implied, which fails to comply with such warranty, has available to him either of two remedies. He may (1) retain the purchased article and recover the damages sustained; or (2) restore or offer to restore the article within a reasonable time, rescind the contract, and recover back the purchase price. * * * He cannot pursue both of these remedies, and an election to pursue one is a waiver of the right to pursue the other. A rescission contemplates and requires the restoration of the status quo. There cannot, however, be a rescission by the buyer coupled with a recovery for damages by reason of an alleged breach of the contract. The two remedies are inconsistent."

In Mundt v. Simpkins, 81 Neb. 1, 115 N. W. 325, the court inquires:

"Upon what theory did the defendants expect to wholly defeat the plaintiff's action by showing a rescission of the contract, and at the same time recover upon such contract by way of counterclaim?"

In Kremer v. Lewis, 137 Minn. 368, 163 N. W. 732, the Minnesota Supreme Court says:

"One who has been induced to enter into a contract by the fraud of the other party has a choice of two remedies. He may stand on the contract, sue for damage in an action of deceit, or he may rescind the contract and recover what he has parted with. He cannot do both. A choice of one remedy is an abandonment of the other."

In Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corporation (C. C. A.) 290 F. 712, 725, Judge Rogers states:

"The two methods of redress are based on inconsistent theories. The general rule is that in all such cases, when the choice is once actually made between inconsistent theories and remedies, it operates as a bar, and the suitor will not be allowed to invoke the aid of the court upon contradictory principles of redress upon one and the same line of acts. A party cannot occupy inconsistent positions in the same matter. In Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52, the court

held that, when a party has two remedies inconsistent with each other, any decisive act by him, done with knowledge of his rights and of the facts, determines once for all his election of his remedy. And in Thompson v. Howard, 31 Mich. 309, 312, it was held that, where a party once makes his election between inconsistent positions, he is thereafter precluded from going back and electing again."

See, also, 3 Elliott on Contracts, p. 286, par. 2097; United States Installment Realty Co. v. De Lancy Co., 152 Minn. 78, 188 N. W. 212; Rasmussen v. Hungerford Potatoes Growers' Ass'n, 111 Neb. 58, 195 N. W. 469; Connihan v. Thompson, 111 Mass. 270; Bowen v. Mandeville, 95 N. Y. 237; Church v. Baumgardner, 46 Ind. App. 570, 92 N. E. 7; Casazza v. Rosenblum (City Ct.) 180 N. Y. S. 253; Holmes v. Henry Jennings & Son (D. C.) 7 F.(2d) 231.

We see nothing in the case of Corse v. Minn. Grain Co., 94 Minn. 331, 102 N. W. 728, relied on by plaintiff in error, in conflict with these cases. The Corse Case does not deal with election of remedies. When defendant foundry company, under the guidance of the other defendants as directors, elected to rescind the agreement upon which the notes were based, other remedies were abandoned. The contract cannot be both repudiated and affirmed. While inconsistent defenses are permitted under various statutes, this does not abrogate the doctrine of election of remedies. Having elected to rescind the agreement, defendants could not keep the property, and, if it suited them better later to bring an action for damages, claim that the contract was valid, and that they could recover damages for the fraud. The foundry company, having announced its purpose to rescind the contract on the ground of fraud, and having attempted to carry out such purpose, is compelled to adhere to that position. It cannot vacillate, to accommodate varying moods of its directors.

[3] The case narrows, therefore, in our judgment, to the controlling question in this writ of error, viz.: Was there an issue for the jury on the question of rescission? The attempted rescission, as we have pointed out, was based on two grounds, viz.: (1) Misrepresentation of the property sold to the foundry company; (2) bad faith in the transaction, in view of McDowell's confidential relationship to the defendants. As to the first subdivision, we may say that defendant foundry company, before and after the notice of rescission, used the machinery and tools and sold some of the furnaces

which it had acquired from the furnace company, collected accounts and bills of that company, kept dominion and exercised ownership over the property, and up to the very time of trial carried the invoice of the property on its books as an asset. Defendant Erickson testified that down to October 18, 1923, 2 years and 4 months after the property was purchased and delivered, defendants intended to pay the notes, and knew of no reason why they should not be paid. Defendants' witnesses testified that any flaws in the property could easily have been detected in 30 days. Certainly any question of fraud in alleged misrepresentation as to the quality of the goods was waived.

Are defendants in any better position as to the other ground of the alleged fraud, viz. the concealing by McDowell of the fact that he was receiving a commission from the creditors of the furnace company? In the notice of rescission, defendant foundry company stated that it stood ready and willing to deliver and turn over the property to the trustee, and demanded the return of the promissory notes. Mere notice of rescission was not enough. If defendant foundry company was to stand on its attempted rescission, its dominion over the property was at an end, except to preserve it, if a tender thereof was refused. It could not continue to assert ownership of the property, and at the same time insist on rescission of the transaction by which the property had been acquired. Defendants knew of the bad faith of McDowell in October, 1923, and from that time until June, 1926, they continued, as we have heretofore pointed out, to use the property as the property of the foundry company. There was no attempt to return it; no offer to pay for its use, or to account for the part of it that had been sold; no effort to return to the vendor what it had parted with, or to restore the status quo. Even at the time of the notice of rescission there was no attempt to ship the goods back to the place where they had been received. The paper tender in the notice of rescission was not kept good. In fact, no tender was made subsequent to the notice of rescission, until after the motion to direct a verdict for plaintiff had been sustained and the trial practically ended, which the court held was too late. The court in its ruling said:

"And there has been no offer to return the money, if they did collect any, upon this rescission; there is no tender of any money here, to date, in court, and for that reason the tender has not been kept good—if there was one made that was valid in the first place."

In the leading case of Shappirio v. Goldberg, 192 U. S. 232, 242, 24 S. Ct. 259, 261 (48 L. Ed. 419) it is stated:

"It is well settled by repeated decisions of this court that, where a party desires to rescind upon the ground of misrepresentation or fraud, he must upon the discovery of the fraud announce his purpose and adhere to it. If he continues to treat the property as his own, the right of rescission is gone, and the party will be held bound by the contract. Grymes v. Sanders, 93 U. S. 55 [23 L. Ed. 798]; McLean v. Clapp, 141 U. S. 429 [12 S. Ct. 29, 35 L. Ed. 804]. In other words, when a party discovers that he has been deceived in a transaction of this character, he may resort to an action at law to recover damages, or he may have the transaction set aside in which he has been wronged by the rescission of the contract. If he choose the latter remedy, he must act promptly, 'announce his purpose, and adhere to it,' and not by acts of ownership continue to assert right and title over the property as though it belonged to him. * * * But he cannot, after such discovery, treat the property as his own and exercise acts of ownership over it, which show an election to regard the same as still his, and at the same time preserve his right to rescission."

We are unable to escape the conclusion that the above language fits this case, and that there was a waiver on the part of defendants of the notice of rescission and of the alleged fraud, an election to regard the property as that of the foundry company, and a ratification of the transaction. Therefore the court was justified in directing a verdict.

It is now urged that the judgment should be modified to the extent of the commission that McDowell was to receive from the creditors. This particular question was not raised in the trial of the case until after the motion had been sustained to instruct a verdict. We should be glad to find some way to do this, as the action of McDowell in securing a commission without the knowledge of the directors on property sold to the foundry company is, we think, indefensible. He was endeavoring to serve two masters. Were McDowell a party to this case, it might be possible to prevent what appears to be an injustice. His contract is with the creditors of the Imperial Furnace Company. His percentage is based on what they receive. If the deduction urged should be made from the judgment, it would not affect McDowell, except as to his percentage upon that deduction. He would be entitled to recover from the creditors under

his contract with them. No judgment in this case would be a bar to such recovery. We assume the question is one that may be determined between defendants and McDowell in a proper action.

It is also urged that the guarantors, Erickson, Harm, and Subby, had a separate defense from the principal on the note. This question likewise was not raised until after the motion to instruct a verdict had been sustained. They joined with the Albert Lea Foundry Company in a common and joint answer, and made a joint defense. Under this situation, there could be nothing but a common verdict in the case. If they are compelled to pay the judgment, they are probably entitled to subrogation.

It is our conclusion that the court was correct in instructing a verdict for plaintiff, and the judgment is affirmed.