## PEOPLES FINANCE CORPORATION v. LILA V. HOUCK AND ANOTHER.[1]

### January 27, 1928.

### No. 26,530.

**Verdict for defendants in replevin action sustained by evidence of fraudulent representations in sale.**

1. Replevin for lunch counter outfit under chattel mortgage given for balance of purchase price. Defense, fraudulent misrepresentations as to condition of property and quantity of stock. Evidence sustains verdict for defendants.

[1]Reported in 217 N. W. 505.

**Inventory of stock purchased admissible with proof of amount of daily sales.**
    2.   Inventory of stock taken nine days after purchase was admissible in evidence in connection with proof of amount of prior sales.

**Objections to charge immaterial on appeal.**
    3.   As under the charge, the jury necessarily found that fraudulent misrepresentations had been made and that the damages equaled the amount of the mortgage, the objections to the charge urged as error became immaterial.

    Appeal and Error, 4 C. J. p. 1041 n. 32; p. 1055 n. 48.
    Evidence, 22 C. J. p. 896 n. 77 New.
    Fraud, 27 C. J. p. 69 n. 26.

    Action in the district court for Hennepin county to replevin a lunch counter outfit under a chattel mortgage given to secure the balance of the purchase price.   There was a verdict for the defendants, and plaintiff appealed from the judgment, Salmon, J. entered thereon.   Affirmed.

    *Friedman & Segal,* for appellant.
    *Theodore F. Wendland,* for respondents.

TAYLOR, C.

Mrs. Joselwitz, assisted to some extent by her husband, operated a lunch counter in the city of Minneapolis and in connection therewith carried a small stock of cigars, tobacco and groceries.   She advertised it for sale.   Defendant Barbour had quit his former occupation on account of ill health, and he and his wife desired to find some small business in which the wife could take an active part. They saw this advertisement in a Sunday morning paper, and with their daughter, Mrs. Houck, went to the place and made inquiries concerning the price, the business and the property.   They knew nothing about the restaurant or grocery business and so stated, and further stated that for that reason they must rely wholly on the information given them.   On Monday they agreed to buy the outfit for $1,200, and on Wednesday completed the purchase by paying $700 in cash and giving a chattel mortgage upon the property for the remaining $500 payable in weekly instalments of $25 each, and

received a bill of sale from Mrs. Joselwitz. The bill of sale was made to Mrs. Houck as she furnished most of the money paid, and she gave the chattel mortgage; but the Barbours took over the business on Wednesday and operated it thereafter. When Mrs. Joselwitz came to collect the first weekly instalment under the mortgage, they refused to make any further payments on the ground that the condition of the property and the quantity of stock on hand had been misrepresented, and offered to turn back the property if she would return the $700.

[1] Some weeks later Mrs. Joselwitz assigned the mortgage to plaintiff, and thereafter plaintiff brought this action in replevin for possession of the property covered by the mortgage. Defendants rebonded and asserted the fraudulent misrepresentations as a defense to the action. The jury returned a verdict for defendants, and plaintiff appealed from the judgment entered thereon.

[2] Plaintiff assigns as error the admission in evidence of an inventory of the groceries, cigars and tobacco taken by defendants nine days after they took possession of the property, and urges that it does not show the full amount of stock turned over as sales had been made therefrom. We think the inventory was admissible in connection with the testimony showing the amount of such prior sales and the manner in which the inventory was taken.

[3] Two assignments of error are directed to the charge. In one plaintiff complains because the forms of verdict given to the jury did not provide for a specific finding as to the amount of defendants' damages, if any. In the other it urges that the charge was on the theory that the applicable rules were those relating to a right to rescind for fraud instead of those relating to a claim of damages for fraud. The court instructed the jury that in order to find a verdict for defendants they must find that defendants had established by a preponderance of evidence that the alleged "representations were made and that they were false and damaged the defendants in the sum of $500." Under the charge the verdict necessarily found that the alleged fraudulent misrepresentations had been made and that the damages resulting to defendants therefrom equaled the full amount of the mortgage. The damages arising

from the fraud could be asserted in this action only as a defense to the claim under the mortgage, not as an affirmative cause of action; and, if they equaled or exceeded the amount of the mortgage, fixing the actual amount was unnecessary. That the charge may not have made the theory of the court entirely clear is not of much importance in view of the specific statement of what the jury must find in order to return a verdict for defendants.

The other assignments are too general to raise any question other than whether the verdict is sustained by the evidence.

The proof of fraudulent misrepresentations is ample. Plaintiff contends that defendants' only remedy was to rescind the contract. Defendants had partly performed the contract before discovering the fraud and had the right to elect whether they would rescind or rely upon their claim for damages. U. S. Installment Realty Co. v. DeLancy Co. 152 Minn. 78, 188 N. W. 212, and cases cited.

The only question remaining is whether the evidence justified the finding that the damages equaled the mortgage in amount. A coffee urn and a meat slicing machine represented to be in good condition were found to be worthless, but their value if they had been as represented is not shown further than might be inferred from the fact that defendants paid $30 for a second-hand coffee urn to take the place of the one in question. A soda fountain represented to be in good condition, although not in use, was in such bad condition that defendants did not try to use it and disposed of it for less than $100. There is no direct evidence of its value if in the condition represented, but Mr. Joselwitz admits stating he had been offered $750 for it in trade for another. Two apparently unopened boxes of cheese were found to be empty when opened, but no proof of the value of the missing cheese was offered. Both Mr. and Mrs. Joselwitz stated that the daily receipts ranged between $40 and $50. The daily receipts immediately after defendants took possession ranged between $25 and $30. No change in conditions appearing, we think this evidence was properly received as defendants had no means of proving the actual amounts which Mrs. Joselwitz had taken in. The premises were represented to be in good and proper condition. The former license had expired some

months previously, but Mrs. Joselwitz showed a receipt for the fee for a new license and said she did not know why the license had not been received and was expecting it every day. In fact she had been notified that no license would be issued unless she made certain changes and improvements in the premises to comply with the requirements of the board of health, and that the place would be closed unless this was done within ten days from the last notice sent her. The time limit expired, and four or five days after defendants took possession the officials came to close the place. Defendants complied with the requirements at an expense of about $100 and obtained a license. Joselwitz refused to inventory the stock on hand saying defendants could see it for themselves, but made various representations concerning it. Both he and his wife stated that the grocery stock turned over completely every week and was all fresh, when in fact sales from the stock were very few and some of it was so old and stale that it was thrown away. According to Mrs. Barbour, Joselwitz stated that there were groceries to the amount of $500 and cigars and tobacco to the amount of $250. According to Mr. Barbour he stated that there were groceries to the amount of $300 and cigars and tobacco to the amount of $250. The jury could well find that the entire stock of groceries, cigars and tobacco amounted to less than $200. They could also find that the premises and all the articles sold were represented to be in perfect condition for use in carrying on the business.

While the evidence does not show very specifically or definitely the amount of damages resulting from the misrepresentations in respect to some of the matters and articles mentioned, yet it shows that the property as a whole was misrepresented to such an extent and in matters affecting its value to such an amount that we think we would not be justified in setting aside the verdict.

Judgment affirmed.