# KNIGHT SODA FOUNTAIN COMPANY v. JOSEPH DIRNBERGER.[1]

October 12, 1934.

No. 29,862.

[1]Reported in 256 N. W. 657.

388

*Silver & Ruttenberg, Alvin B. Christofferson,* and *James E. Markham,* for appellant.

*Doane & Hengel,* for respondent.

*HOLT, Justice.*

Plaintiff appeals from the order denying its motion for a new trial after verdict for defendant.

The action was in replevin, the plaintiff alleging that it was the owner and entitled to the immediate possession of a soda fountain and attachments, including an electric carbonator, and that defendant retains possession thereof after demand. The answer alleges that defendant bought the property of plaintiff and that title thereto is in defendant, denies the other allegations of the complaint, and prays judgment· that plaintiff take nothing. Defendant rebonded and retained possession.

The evidence establishes these facts conclusively: One Brown, a sales agent of plaintiff, after several days of negotiations with defendant at his home in Sauk Center and at Brown's home and office in St. Paul, obtained on July 14, 1931, a written order for the purchase of a fountain of plaintiff's manufacture described in the order. Plaintiff's factory and place of business is in Chicago, Illinois. The order contains a provision that the title to the fountain is to remain in the seller until all the payments of $42 each month for 35 months, beginning with September, 1931, and one of $39.14 for the 36th month, are made. It recites a down payment of $422.95. In the order defendant agrees that upon receipt of the fountain he will execute his promissory note for the deferred monthly payments

and secure said note by executing and delivering to plaintiff a chattel mortgage on the fountain. This order was signed by defendant and accepted by plaintiff in writing. A copy thereof was given to defendant at that time, or a few days later, as he contends. Sometime in the first part of August the fountain was shipped from Chicago to Sauk Center, and plaintiff, by letter dated August 4, advised defendant to go to the bank at the latter place and execute the papers necessary to complete the deal. In the letter plaintiff says:

"For your convenience we are enclosing herewith a copy of the promissory note, showing the payments as they fall due."

Defendant went to the bank and executed the note and chattel mortgage on the 12th day of August, 1931. The instruments were dated August 3, 1931. Thereupon he obtained the bill of lading and received from the carrier the fountain ordered. Plaintiff caused the fountain to be set up and installed where it was to be used. The refrigeration needed in the fountain was to be supplied by a machine called a compressor run by an electric motor. Defendant was to provide and install the compressor, a machine weighing about 300 pounds and costing around $300. The fountain did not refrigerate as desired. It was thought that the two first compressors used were not suitable, and then a third compressor was attached of the sort recommended by plaintiff, but still the fountain failed to operate to defendant's satisfaction. It is admitted that none of the monthly payments called for by the note have been made. The testimony of plaintiff is that the fountain was worth from $1,500 to $1,600 when the action was begun. Defendant, whose lack of experience and low intelligence, according to his counsel's claim, scarcely qualified him to testify as to value, did, however, testify that this fountain was worth from $500 to $600. He has paid therefor $422.95 and no more. It appears that there are two main separate compartments in the fountain so designed and arranged that a different temperature can be had in the two. The compartment for ice cream requires a lower temperature than the one holding the syrups and the water for the drinks. The latter

compartment is the chief cause of the complaint. Defendant says that he has disconnected that compartment from the refrigeration system. He has continued to operate and use the ice cream compartment, but also claims inefficiency in the operation thereof.

Defendant refused to assert a counterclaim at the trial, basing his defense solely on the proposition that plaintiff had practiced fraud and deception, and that therefore the chattel mortgage and note, upon which plaintiff's right to possession depends, were void and ineffectual for any purpose. The case was submitted to the jury on that theory.

The assignments of error are: (a) The verdict is not justified by the evidence and is contrary to law; (b) the court erred in refusing to grant judgment notwithstanding the verdict; (c) the charge and parts of the charge to which exceptions were taken prejudiced plaintiff.

Before taking up these assignments of error it is well to refer to the case of M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801. The $1,635 promissory note there in suit represented the balance of the purchase price of the fixtures, furniture, and equipment for defendant's hotel purchased of Brown-Jaspers Company by defendant under a conditional sales contract, executed July 15, 1931. That deal was conducted for the seller by Mr. Brown, who in this action acted as agent of this plaintiff. Mr. Brown was an officer and managing agent of the Brown-Jaspers Company. The two deals were negotiated during the same period, and the property in both deals went to equip the hotel and restaurant defendant was to operate. At the same time that defendant paid this plaintiff $422.95 upon the order for the fountain, he paid Brown-Jaspers Company $1,551 on the conditional sales contract mentioned. The note given to Brown-Jaspers Company was transferred before maturity to M & M Securities Company, which, in the action referred to, alleged that it was a good faith purchaser thereof for value. In that case Brown did not testify, and no testimony was offered by the plaintiff therein relative to the transaction out of which the note came to be executed, and, as to that, defendant and his wife were the only witnesses called. The facts and infer-

ences therefrom are recited in the above cited decision and may have been given too much effect by court and counsel in the trial of the instant case. There the defense was that by trickery and fraud defendant had been induced to sign a promissory note when he thought he was merely signing a conditional sales contract or order for the goods. Here the issue, to be sure, is also fraudulent representations; but by defendant's admissions and other corroborative testimony it conclusively appears that defendant knew that he signed an order for the purchase of a fountain of the make, kind, and style called for by the order and that he knew it was a promissory note, correctly stating the payments to be made and a chattel mortgage securing the same when he executed those instruments. There can be no inference drawn from the evidence that there was any intention on the part of Brown to sell a fountain with a known defect; for he had never seen it, and it appears not to have been fully completed when ordered. On the contrary, the evidence indicates that plaintiff is a known manufacturer of several styles of fountains, which it deems equal, if not superior, to any fountain of the same sort in the market. The fountain was in that class of merchandise, manufactured in various sizes and styles for the market and so advertised, as in the case of automobiles, tractors, threshing machines, and the like. The agent who procures an order to purchase of the manufacturer a certain style of automobile cannot be charged with intentional fraud or deception if the car, delivered to fill the order, should happen to have a defect found in no other car of the same style and make.

In our opinion, the verdict herein is not justified by the evidence and is contrary to law. The fact that defendant has paid only $422.95 and claims title to property which he says the seller priced to him at $1,600, and which he admits to be worth $500 to $600, in its present condition, shows that the verdict declaring title in defendant free from any claim thereon by plaintiff, the seller, is inequitable and unjust. The trial court deemed that in some other lawsuit plaintiff might have redress. Upon the issue made by the pleadings, the rebonding and retention by defendant of the fountain, we think a judgment entered upon the present verdict would deter-

mine that plaintiff had no title to or interest in the fountain and would wipe out all claim against defendant growing out of the transaction whereby the fountain came into the possession of defendant. It may be conceded that the order of July 14 was part of the same deal that culminated in the execution of the note and chattel mortgage. Those three instruments are the only source of defendant's claim either to title or to the right of possession of the fountain. Defendant did not rescind by his own act so that he may retain the fountain as security for the return of the $422.95, for he admits that he has made use of the fountain for many months after he discovered the alleged fraud practiced upon him. Such retention, coupled with its use, is an election to affirm the contracts mentioned. He has not come into court for rescission, and his only remedy now is an action for damages for the deceit or false representations. If he so desired he could and should have counterclaimed for such damages in this replevin action. W. W. Kimball Co. v. Massey, 126 Minn. 461, 148 N. W. 307. Peoples Finance Corp. v. Houck, 173 Minn. 443, 217 N. W. 505, where a verdict for a defendant was sustained in a replevin action because the evidence established that the defendant had paid more for the property than it was worth, whereas here defendant has paid much less than its value.

An attentive reading of the entire record will convince any openminded person that the only issues for the jury were whether or not the fountain would do the work it was represented it was capable of doing when properly adjusted and cared for, and, if it failed to come up to these representations, how much was defendant damaged; for defendant admitted that none of the payments called for by the note have been made. As already stated, defendant cannot claim fraud or deceit which led him to sign these three instruments not knowing what they were. There is no claim that the fountain and its equipment is not in appearance, material, and construction as represented and as described in the order. Defendant desired to buy a refrigerating fountain, and we do not understand that he claims that by any deceit he was led to buy an article which he did not want to use or had no need of in his business. There is no

dispute really as to the material representations upon which defendant had a right to rely. Mr. Brown frankly admits that he represented that the fountain was first-class and would properly refrigerate the compartments automatically and that it was a little superior to the best fountains of the kind in the market. The evidence also shows that when adjusted by the mechanic who installed it it worked satisfactorily, as defendant admits, for a few days. So that if there be any failure to comply with the representations or warranties, it is in some of the working parts of the equipment. And as far as this record goes it seems to point to the float valve in the compartment devoted to the refrigeration of the water and fruit juices, evidently readily and inexpensively remedied by replacing the valve. So in every view of the evidence we deem it does not justify the verdict.

Plaintiff claims that the court erred in not granting judgment notwithstanding the verdict. In view of the pleadings and the theory upon which the case was submitted, we conclude that, in the interest of justice, there should be a new trial rather than judgment notwithstanding the verdict. If defendant is entitled to damages because of any false representations or warranties, the relief should be obtained in this action. Under the decision in U. S. I. Realty Co. v. DeLancy, 152 Minn. 78, 188 N. W. 212, 214, and cases therein cited, the remedy now remaining to defendant is an action based upon the failure of the fountain to accomplish what it was represented or warranted to do in refrigerating the two compartments therein, when properly adjusted and operated. This can be had in a replevin action for possession of the property involved. Peoples Finance Corp. v. Houck, 173 Minn. 443, 217 N. W. 505. There ought not to be judgment notwithstanding the verdict unless it is clear that no other judgment than the one granted could be rendered between the parties.

That the learned trial court misconceived the issues as made by the pleadings and evidence appears from these excerpts from the charge, to which exceptions were taken and errors are here assigned:

"If written instruments are obtained through fraud, that is, if a person is misled through someone making material statements

that are false, on which he relies and which he believes, the court will not recognize any such paper and it will just take it and throw it away as though it were waste paper. * * * If, however, as I said, you believe that this chattel mortgage and this note and this contract are void because of fraud, then your verdict must be for the defendant. Then Dirnberger keeps the fountain until some other suit is brought in which it is found what the fountain is really worth."

As to the first excerpt, it was misleading and not appropriate, for by not only retaining and claiming title to the fountain but by the continued use thereof after the discovery of fraud, which defendant admits, he affirmed the deal as made, and his only remedy is for damages, which could be enforced by way of counterclaim herein. In such a case the instruments evidencing the deal could not be disregarded, they must be taken as valid. The evidence did not warrant finding a rescission by defendant's own act. His offer to return the fountain was not absolute, followed by ceasing its use, but in the alternative that he would pay one-half of the note instead of the whole amount. When defendant elected to retain and use the fountain, after discovery of the alleged fraud, he affirmed the contracts relating to the purchase; they are thereafter valid. He has sought no rescission in equity. In U. S. I. Realty Co. v. DeLancy, 152 Minn. 78, 82, 188 N. W. 212, it is said concerning one entering a contract relying on another's representations which turned out to be false:

"If he has performed the contract, in whole or in part, before discovering the fraud, he may affirm the contract and sue for damages, or he may rescind the contract and recover what he parted with on returning what he received, but any act of ratification after knowledge of facts authorizing a rescission operates as an affirmance and waives the right to rescind."

Banninger v. Landfield, 209 Wis. 327, 245 N. W. 113, and the cases therein referred to are in point on this proposition, that by asserting title and continued use of the fountain, after discovery of the alleged fraud or false representations regarding its efficiency,

the deal is not subject to rescission. The situation here is not such as to be controlled by the rule applied in Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476. The instruction first quoted was erroneous and inapplicable to the facts admitted or conclusively proved. For the same reason, the second quoted excerpt of the charge must be considered erroneous, and particularly prejudicial in that it suggests to the jury that their verdict is not so important to plaintiff because its rights may be settled in some other lawsuit. We think this verdict, if permitted to go into judgment, is conclusive against plaintiff.

Error is assigned upon the whole charge in that it is argumentative and so worded as to excite prejudice. It is enough to say that good practice does not permit such an assignment of error. There are paragraphs which undoubtedly are free from the objections now attempted to be raised. Murphy v. Collins, 155 Minn. 290, 193 N. W. 468. It is not likely that certain unguarded language now criticized will be employed in the charge upon another trial.

The order is reversed.

